UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID GOLDSTINE,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX FREIGHT INC, et al.,<br><br>Defendants. | CASE NO. C18-1164 MJP<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 56), Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 64), Plaintiff's Reply re: Motion for Partial Summary Judgment (Dkt. No. 65);

2. Defendants' Motion for Summary Judgment (Dkt. No. 61), Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 66), Defendants' Reply in Support of Motion for Summary Judgment (Dkt. No. 70);

all attached declarations and exhibits; and relevant portions of the record, rules as follows:

IT IS ORDERED that Plaintiff's motion for partial summary judgment is PARTIALLY GRANTED and PARTIALLY DENIED; Defendants' affirmative defenses are withdrawn or stricken with the exception of failure to mitigate and failure to participate in the interactive process.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is DENIED.

## **Background**

Plaintiff was employed by Defendant FedEx Freight ("FXF") as a driver. Under the regulations (Federal Motor Carrier Safety Act; "FMCSA") which govern the industry, drivers must be medically qualified to drive, which they establish by periodic physical examination. Interestingly, FXF does not controvert Plaintiff's representation that he self-identified as disabled when he applied for the job (Dkt. No. 61-5, Goldstine Depo at 2-3). The company simply observes: "This form is not reviewed by the Service Center." Dkt. No. 61, Def Motion at 5.

Plaintiff was medically qualified to drive on February 2, 2017, but the qualification was only valid for three months (the examining doctor was concerned about Plaintiff's glucose levels and wanted him to return in three months for a re-check of his blood sugar). (Dkt. No. 61-2, Ex. 1.) Plaintiff then underwent a follow-up Department of Transportation ("DOT") physical on March 9, 2017 which qualified him for one year. At the time of the February exam, he disclosed a "right knee" condition. Id.

On April 6-7, 2017, Plaintiff was assigned a run from the FXF depot in Everett, Washington to the Portland, Oregon Service Center. The assignment required him to drive a trailer with a broken (uncloseable) door.[1] Plaintiff told his Operations Supervisor (Jessen) that it

---

[1] Defendant asserts (without citation to authority) that "[d]rivers may drive with a trailer door open if the trailer has no freight and is in the deadline area [*a specially-designated parking area*]." (Dkt. No. 61, Motion at 3.) Plaintiff

would be unsafe to drive the trailer with an open door and that, because he had limited range of motion in his right knee, he was not going to risk climbing into the trailer in the dark (on a rainy night) to fix it. Jessen himself tried unsuccessfully to close the door, then told Plaintiff to take another empty trailer, which Plaintiff did. (Dkt. No. 68, Decl. of Goldstine, ¶¶ 20-22.)

FXF asserts that, based on Plaintiff's disclosure of his (allegedly undisclosed) physical limitation, it was required to insist on a new physical exam to confirm that he was medically qualified to perform his duties; Defendant cites to 49 C.F.R. § 391.11(a) as mandating the examination.

> **(a)** A person shall not drive a commercial motor vehicle unless he is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.

Plaintiff reports that he was required to submit a written report about the incident (which he did), was "medically de-certified," de-activated and required to be medically re-certified before returning to work. (Decl. of Wong, Ex. B.) He alleges that the Service Center Manager (Applesland) told him that he (Plaintiff) had stated "he could not do his job because of his disability," a statement which Plaintiff denies making. Decl. of Goldstine, ¶¶ 39-41.

On April 13, 2017, Plaintiff underwent another DOT physical. He claims he was re-certified (Dkt. No. 66, Plaintiff's Response at 5); Defendant alleges that "the DOT physician refused to sign the physical exam report." Motion at 3-4.[2] Defendant alleges that "Plaintiff did

---

cites to the FedEx Driver's Manual: "No trailer, either empty or loaded, shall be pulled with the trailer doors open." (Dkt. No. 67-1, Decl. of Wong, Ex. A.)

[2] From the evidence (Goldstine Depo, Dkt. No. 61-5 at 26; email from FXF's Senior Security Specialist to its Employee Relations Advisor, Dkt. No. 67-6, Wong Decl., Ex. E), it is apparent that the doctor's "refusal" was based on a belief that the re-examination was unnecessary – Plaintiff had just had a certification exam, his limitations had been discussed and he had been certified, therefore a further exam was a waste of time and resources.

not inform FXF that the physician refused to sign the report" (id. at 4); Plaintiff testified that he felt there was no need to inform his employer because the doctor told him she had already contacted Defendant's Operations Supervisor (Hoggatt). (Goldstine Depo at 26.)

Plaintiff reports an April 18, 2017 meeting with FXF's Employee Relations Advisor (Tayman) and his Operations Supervisor where he was accused of withholding information regarding his "disability" and informed that FXF would not accept the results of the April 13 physical. Plaintiff clearly believes that he informed the examining physician about his physical limitations; Defendant just as clearly believes that (prior to a later physical in June) Plaintiff had not advised the examiner about why the re-examination was required. (*See* Dkt. No. 67-8 at 3; email from FXF Safety Assistant Tammy Roger to Applesland.)

Plaintiff alleges that he was also advised by Tayman that she would get back to him regarding other work he could do, but that he was never contacted again about an interim accommodation. Decl. of Goldstine at ¶¶ 46-50. Plaintiff submitted a copy of FXF's Reasonable Accommodation Procedures (Decl. of Wong, Ex. C), which he asserts (and Defendant FXF does not deny) were not followed.

On April 27, Plaintiff alleges that he was advised that he was not to appear at the Everett Service Center while "the investigation" was ongoing. Goldstine Decl. at ¶¶ 55-56.[3] On May 2,

---

In Defendant's reply brief, the company claims that the April 17 exam was rejected because "driver failed to list [his] complete health history (Medical restrictions preventing him from opening and closing trailer door.)" (Dkt. No. 67-2.) The Court did not consider this argument: (a) it was presented without justification or explanation for first time in Defendant's reply brief and (b) the April medical report is not among the evidence attached to the motion.

[3] This banning of Plaintiff from the premises does not appear to arise from the investigation of whether or not Plaintiff was disabled and unable to perform his duties, but rather was related to "workplace violence" allegations. Plaintiff asserts that "[t]he investigation regarded a false allegation of Goldstine keeping a firearm in his truck," but a review of the report submitted in evidence (Dkt. No. 67-5, Wong Decl., Ex. E at 5) makes it clear that no credence was given to the firearm allegation; "the investigation" concerned allegations by Goldstine's supervisor, Mott (who confronted Plaintiff after finding out that Plaintiff's work assignment was not going to be completed), that he felt threatened during the interaction with Goldstine over his refusal/inability to close the door on the trailer.

an FXF Security Specialist (Flick) emailed Tayman to clarify that Plaintiff's April 13 exam had not been terminated because of Plaintiff's behavior (apparently the doctor had advised someone at FXF that Plaintiff was "angry" during the exam) but because the examining physician saw no need to re-examine Goldstine when he had just recently been certified as fit for duty. (Dkt. No. 67-6, Wong Decl., Ex. F.) Plaintiff claims that Tayman emailed him the next day, "misstating several facts about [my] disability," and "falsely stat[ing] that U.S. Healthworks banned him from their facility for aggressive, threatening and inappropriate behavior" (Plaintiff Response at 7), but the citation in his briefing is not to that email.

On June 5, Plaintiff filed a discrimination complaint against FXF with the Washington State Human Rights Commission ("HRC"). On June 15, Plaintiff was examined again. Defendant alleges that there were problems with the paperwork (i.e., that the examining physician did not complete the required "Federal Form" per 49 C.F.R. § 391.43[4]), that they worked with the physician to correct the deficiency and that the company medically requalified him to drive on July 25, 2017. The company alleges that Plaintiff was called at least twice to advise him that he could return to work, but FXF received no response. (Dkt. No. 61-4, Applesland Depo at 9.) An August 3 letter from Tayman also went unanswered (Dkt. No. 61-2, Ex. 4); Plaintiff asserts that he did not receive the letter and that the voicemails did not reveal the reason for the calls. (Goldstine Decl. at ¶¶ 64-66.)

Plaintiff states that, having been out of work for three months, he took another job on July 8. (Goldstine Decl. at ¶ 63.) (Defendant claims that he took the job before the June

---

[4] **(a)** Except as provided by paragraph (b) of this section, the medical examination must be performed by a medical examiner listed on the National Registry of Certified Medical Examiners.
\* \* \*
**(f)** The medical examination shall be performed, and its results shall be recorded on the Medical Examination Report Form, MCSA-5875

physical exam "was completed" (Motion at 3-4), but their citation to that evidence is not in the exhibits they submitted; it is possible that FXF means that Plaintiff took the job before July 25 when the Federal Form was finally submitted.)

On August 10, Defendant terminated Plaintiff's employment for "Violation of Leaves of Absence policy for failure to return from leave." Wong Decl., Ex. I.

**<u>Discussion</u>**

<u>Plaintiff Motion for Partial Summary Judgment</u>

Defendant's Answer lists 13 "affirmative defenses:"

1. Failure to state a claim
2. Statute of limitations/contractual limitations period
3. Failure to exhaust administrative remedies
4. Outside of the scope of administrative charge
5. Lack of jurisdiction
6. Insufficient and/or untimely filing of charge with WA State Human Rights Commission
7. Defendant's adoption of anti-discrimination and anti-retaliation policies and good faith efforts
8. No malice or reckless indifference
9. No right to punitive damages
10. Violation of Defendant's right to procedural due process, right to protection from "excessive fines," and substantive due process
11. Failure to mitigate
12. Failure to participate in interactive process
13. Reservation of rights

Dkt. No. 20, Answer at 10-11. Defendant voluntarily withdraws Numbers 1-6. (Dkt. No. 64, Defendant Response at 2.)

FXF first attacks the motion on procedural grounds, arguing that it is improperly filed as a summary judgment and should instead have been brought as a FRCP 37 motion to compel.[5] It is not a meritorious position – Plaintiff does not allege that Defendant's discovery responses are deficient, does not seek further documentation or responses, and does not claim any discovery violations as the basis for his motion. FRCP 56(a) reads: "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." A motion for partial summary judgment seeking dismissal of asserted affirmative defenses is permitted under the statute.

Plaintiff relies on Defendant's discovery responses and Rule 30(b)(6) testimony to establish the "undisputed facts" regarding FXF's asserted affirmative defenses and the resulting absence of evidence to support those defenses. Following Defendant's withdrawal of Affirmative Defenses 1-6, the remaining defenses are discussed *infra*.

**#7:** *Defendant's adoption of anti-discrimination and anti-retaliation policies and good faith efforts*

Defendant presents no legal authority that "adoption of anti-discrimination and anti-retaliation policies" is a defense to claims of discrimination and retaliation, and concedes that "'good faith' is not an affirmative defense." Response at 8.

RULING: **GRANTED (stricken).**

---

[5] FXF also asserts that Plaintiff's motion should have been brought under FRCP 12(f), which permits the court to order "stricken from any pleading any insufficient defense," then immediately concedes that such a motion is "a rarity" and "disfavored" and that the Ninth Circuit "has never announced a standard for determining whether a defense is insufficient." Response at 7. It then points out that a 12(f) motion must be served within 21 days of service of the underlying pleading, therefore it would be untimely. The argument is without merit.

**#8:** *No malice or reckless indifference*

Again, Defendant cites no authority that these are "affirmative defenses" and responds to Plaintiff's motion by arguing that "the burden is on plaintiff to demonstrate that the employer acted with malice or reckless disregard." Id. at 9.

RULING: **GRANTED (stricken).**

**#9:** *No right to punitive damages*

Defendant asserts again that "plaintiff always has the burden to show the elements required for the imposition of punitive damages." In other words, this is not an affirmative defense.

RULING: **GRANTED (stricken).**

**#10:** *Violation of Defendant's right to procedural due process, right to protection from "excessive fines," and substantive due process*

Defendant's answer clearly alleges that, to the extent that Plaintiff seeks punitive damages, it is a violation of the rights listed above. Plaintiff's motion argues that, while the Washington Law Against Discrimination ("WLAD") does not permit recovery of punitive damages, the Americans with Disabilities Act ("ADA") does. FXF responds to this argument as follows:

> The only time a Court will evaluate whether a punitive damage award is excessive or violates substantive due process is after an award of punitive damages has been made. Because of this logical requirement, plaintiff's argument fails as defendant has no obligation or need to present evidence prohibiting excessive fines unless the award is made.

Id. at 9-10.

RULING: **GRANTED (stricken)**(subject to Plaintiff requesting punitive damages at a future point in the proceedings)**.**

1 | **#11:** *Failure to mitigate*

The parties agree that failure to mitigate <u>is</u> an affirmative defense. Plaintiff argues that Defendant has not produced any evidence that he failed to mitigate his damages. While Defendant's discovery response to Plaintiff's interrogatory regarding this defense is insubstantial ("Plaintiff refused to provide evidence of his damages as he claimed he did not know how much he is paid at his current employer;" Dkt. No. 57-2, Decl. of Wong, Ex. B at 6), Defendant (1) has a plethora of evidence (*see* Defendant's summary judgment motion) which it introduces in support of its argument that Plaintiff failed to respond to its attempts to get him to return to work (i.e., mitigate his damages) and (2) has its own version of the events which Plaintiff claims points to its retaliation against him and eventual constructive discharge. This is not a case of an absence of evidence on Defendant's part; it is a matter of disputed issues of material fact, thus inappropriate for summary judgment.

RULING: **DENIED.**

**#12:** *Failure to participate in interactive process*

Defendant cites the same evidence it intends to adduce to prove failure to mitigate (basically, Plaintiff's alleged failure to respond to FXF's calls to return to work) to argue that Plaintiff also failed to participate in the interactive process required to ascertain whether any accommodations are available for a disability. While simply calling an employee and asking them to return to work is not strong evidence of an interactive process intended to address issues of disability and reasonable accommodation, the Court cannot say that Plaintiff is entitled to a ruling as a matter of law.

RULING: **DENIED.**

**#13:** *Reservation of rights*

This appears to be simply a catch-all, "in case we think of anything else" provision. Defendant does not even argue that it should not be dismissed.

RULING: **GRANTED (stricken).**

Defendant Motion for Summary Judgment

1. *Disability discrimination*

In support of its argument that it was required to "decertify" Plaintiff as a qualified driver following the April 6 incident, Defendant cites the FMCSA regulations that prohibit a motor carrier from allowing a driver to operate a commercial vehicle if the motor carrier has reason to believe that a driver suffers from an impairment which undermines his ability to operate a commercial vehicle safely. 49 C.F.R. § 392.3.[6] Defendant also cites to those same regulations for a prohibition against permitting "a person to drive a commercial motor vehicle unless that person is qualified to drive:"

> **(a)** A person shall not drive a commercial motor vehicle unless he is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.
> **(b)** Except as provided in subpart G of this part, a person is qualified to drive a motor vehicle if he/she –
> * * *
> **(4)** Is physically qualified to drive a commercial motor vehicle in accordance with subpart E -- Physical Qualifications and Examinations of this part…

49 C.F.R. § 391.11.

---

[6] No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate the commercial motor vehicle.

Finally, regarding its requirement that Plaintiff re-certify himself following the April 6 incident, FXF cites 49 C.F.R. § 391.45:

> The following persons must be medically examined and certified in accordance with § 391.43 as physically qualified to operate a commercial motor vehicle:
> * * *
> **(f)** Any driver whose ability to perform his or her normal duties has been impaired by a physical or mental injury or disease…

FXF's primary defense is that its obligation to comply with the FMCSA overrides the application of the ADA and renders the company immune to claims of disability discrimination. *Citing* Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 573 (1999)( "When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law."). But Kirkingburg is old law that has been repudiated by the legislative history of updates to the ADAAA (*see* Pub.L.No. 110-325, §2(a)(4); Plaintiff Response at 13, n.5); the updated ADA definition of a "qualifying disability" requires only that a medical condition substantially limit a major life activity, which Plaintiff argues he has established by virtue of the fact that his limited range of motion in his knee affects his ability to bend.

The Court agrees with Plaintiff that his disability discrimination claims must be analyzed under the "burden-shifting" framework of McDonnell Douglas[7], and under that analysis Defendant is not entitled to summary judgment on the discrimination claims. His claim of "disability" arguably qualifies under the ADA definition, he has evidence that he was able to

---

[7] Under McDonnell Douglas, Plaintiff must establish a *prima facie* claim of discrimination by showing (1) he has a disability, (2) he is able to perform the essential functions of his job with reasonable accommodations and (3) his disability was a factor in an adverse employment decision. The burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action, then back to Plaintiff to show that Defendant's proffered reason is merely pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); WPI 330.32; Manual of Model Civil Jury Instruction for the Ninth Circuit, § 12.1C (2019).

perform the essential functions of his job, and it is beyond question that FXF took adverse action against him on the basis of his perceived impairment.

Nor is the Court persuaded that Defendant has established a "legitimate, non-discriminatory" reason for either de-certifying Plaintiff or keeping him from working for the period of time it did on the grounds which it cited. Plaintiff has presented evidence that (1) he told the company about the disability prior to being hired (it is scarcely a rebuttal to this argument that "[FXF's] Service Center did not review the form"), (2) performed his job without complaints up to the time of the April 6 incident, and (3) revealed the existence of right knee surgery during the February 2017 exam which certified him as fit for the period during which the incident occurred (*see* Dkt. No. 61-2 at 2; "Driver Health History").

Additionally, FXF has adduced no evidence that the task it requested Plaintiff to do – the lowering of the disabled trailer door – is a prerequisite for the operation of a commercial vehicle; i.e., whether his inability/refusal to shut the trailer door rendered him unfit to drive a truck. In other words, there are disputed issues of material fact regarding whether FXF had a reasonable belief that Plaintiff was either unfit to operate a commercial vehicle or was "disabled," and whether the company had "no choice" other than to de-certify him and await the results of another medical exam, thus raising the spectre of "disability discrimination."

Defendant attempts to argue that Plaintiff suffered no adverse employment actions. Even setting aside the issue of constructive discharge (*see* discussion *infra*), Defendant's de-certifying Plaintiff to drive, failing to offer Plaintiff either reasonable accommodation or alternate work, then delaying his return to work by more than three months[8] are classic adverse employment

---

[8] Even the 5½ week delay between the June 17 exam and the July 25 recall alone is arguably an adverse employment action, given that Plaintiff was not getting paid during this period.

actions. FXF's inability to establish as a matter of law that Plaintiff was medically unqualified to work means that the company is not entitled to resort to "mandatory federal regulations" as a defense.

As further proof of his claim, Plaintiff presents evidence that Defendant failed to engage in the "interactive process" required by the ADA to identify appropriate reasonable accommodations – i.e., "communication and good faith exploration of possible accommodations." Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds*, 535 U.S. 391 (2002). (*Note:* there is a similar requirement in the WLAD*;* Sommer v. DSHS, 104 Wn.App. 160, 172 (2001).) Failure to engage in the interactive process is a failure to make a reasonable accommodation. Goodman v. Boeing, 127 Wn.2d 401, 408 (1995). Defendant attempts to shift the burden for this to Plaintiff, first by arguing that Plaintiff told the company that he was not asking for a reasonable accommodation (i.e., he just wanted to do his job) and second by claiming it was Plaintiff's duty to request an accommodation. But (1) if Defendant <u>thought</u> Plaintiff was disabled (which it clearly did), Plaintiff is not required to request an accommodation because (2) the duty to accommodate (and thus engage in the interactive process) also arises whenever the employer is on notice of the need; in this case, Defendant's belief that Plaintiff was claiming a disability constitutes the requisite notice and triggers the duty.

While Defendant argues that its attempts to "re-certify" Plaintiff qualify as an interactive process intended to arrive at a reasonable accommodation, Plaintiff alleges without rebuttal by Defendant that he was never contacted about doing any alternate forms of work during the period when he was de-certified as a driver. This alone is enough to defeat summary judgment ('[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to

whether the employer engaged in good faith in the interactive process;" Barnett, 228 F.3d at 1116.)

Defendant's arguments fare no better under WLAD, which requires a *prima facie* showing that an employee was (1) disabled, (2) subject to an adverse employment action, (3) doing satisfactory work, and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination. Marin v. King County, 194 Wn.App. 705, 808-09 (2016). The burden of proof then shifts in a manner similar to McDonnell Douglas. Id., Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 188 (2001). The analysis under WLAD does not change significantly from the ADA analysis. For the reasons stated above, Defendant is also not entitled to summary judgment of dismissal of Plaintiff's state disability discrimination claims.

2. *Constructive discharge*

WLAD requires a plaintiff alleging constructive discharge to show (1) a deliberate act by the employer that made working conditions so intolerable that a reasonable person would have felt compelled to resign, and (2) a resignation for reasons related to the intolerable conditions. Washington v. Boeing Co., 105 Wn.App. 1, 15 (2000).

FXF first asserts that it did not "terminate" Plaintiff, but this argument is not determinative in a *constructive* discharge case; neither is the company's allegation that "Plaintiff refused to return to work." The company also maintains that "plaintiff was not constructively discharged because he admitted he never resigned," but this is an inaccurate interpretation of "constructive discharge." The gravamen of the cause of action is that an employer makes conditions at work so intolerable that a person would have felt compelled to resign. Defendant cites to no statutory or case law that what FXF clearly viewed as a "refusal to return to work" is not a form of resignation for purposes of a constructive discharge claim.

1    Defendant argues that doing its mandated duty under federal regulations (requiring the re-certification exam and not approving it until Plaintiff disclosed his entire medical history to the examining physician) cannot form the basis of creating "intolerable working conditions." But in the face of disputed issues of material fact whether the examination was necessary and no evidence (or at least inadmissible evidence, given that Defendant did not assert its "failure to give complete health history" argument until its Reply) that Plaintiff failed to disclose his limitation to the re-examining physician, Defendant is not entitled to summary judgment on this claim.

3. *Retaliation*

Proof of this claim rests on Plaintiff's ability to demonstrate that (1) he was engaged in a protected activity, (2) suffered an adverse employment action, and (3) the protected activity was a substantial factor in the adverse employment action. Schonauer v. DCR Entertainment, Inc., 79 Wn.App. 808, 827 (1995) Hines v. Todd Pac. Shipyard, 127 Wn.App. 356 (2005). A showing of a non-retaliatory reason for the action shifts the burden back to the plaintiff to demonstrate pretext. Curtis v. Clark, 29 Wn.App. 967, 969 (1981).

Any opposition expressed to "conduct that was at least arguably a violation of the law" qualifies as "protected activity." Estevez v. Faculty Club of Univ. of Washington, 129 Wn.App. 774, 798 (2005). Plaintiff points to actions ranging from his complaints to his supervisor and FXF management regarding the treatment stemming from his alleged disability to his discrimination charge filed with the Washington HRC as evidence of protected actions, and the Court concurs.

While only knowledge of the protected activity is required for liability (a showing of "but for" causation is not required; Allison v. City of Seattle, 118 Wn.2d 79, 89 n.3 (1991)),

[c]ausation sufficient to establish the third element… may be inferred
from circumstantial evidence, such as the employer's knowledge that the
plaintiff engaged in protected activities and the proximity in time between
the protected action and the allegedly retaliatory employment decision.

Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). Defendant does not deny it was aware of Plaintiff's complaints to supervisors and management or his HRC complaint. All the allegedly retaliatory activities took place within approximately two months of the original incident; sufficiently proximate in time to satisfy that requirement.

Defendant again cites to the non-discretionary nature of the FMCSA regulations as a defense to any assertion that it retaliated against Plaintiff. As noted above, it is far from clear that Defendant was in fact mandated to take the steps it did; i.e., that Plaintiff was in fact unfit to operate a commercial vehicle as required by law. That circumstance, combined with other actions such as banning Plaintiff from the premises and arguably failing to engage in any interactive process to reasonably accommodate him, suffices to establish that Defendant cannot prevail on its defense as a matter of law; i.e., is not entitled to summary judgment of dismissal of the claim.

## **Conclusion**

It appears to the Court that this case is complicated by the paradoxical nature of the facts and the conclusions/assumptions that the parties drew from what transpired on April 6, 2017 and its aftermath. Defendant appears to be confused regarding how it can be accused of disability discrimination when Plaintiff has so vigorously asserted that he is not disabled. What FXF fails to grasp is that, because the company insisted on treating Plaintiff as if he was disabled, it is required to comply with the ADA whether Plaintiff thought he was disabled or not. Defendant's insistence on treating Plaintiff's one-time refusal to do what was (a) an arguably unsafe and (b) apparently impossible task (given that Plaintiff's supervisor could not close the door, either) on

the basis of a physical limitation as a claim of disability allows Plaintiff to argue both that (1) he was not disabled and therefore not required to submit to the re-certification exams that Defendant treated as a prerequisite to his return and (2) Defendant is liable for not having fulfilled its obligations as the employer of an employee who was believed to be disabled.

Defendant's motion for summary judgment will be denied. With the exception of Defendant's claim of failure to mitigate and failure to engage in an interactive process, Plaintiff's motion for summary judgment regarding the claimed affirmative defenses will be granted.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 24, 2019.

Marsha J. Pechman
United States Senior District Judge