1

THE HONORABLE MARSHA J. PECHMAN

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

DAVID GOLDSTINE,

9

Plaintiff,

Case No. 2:18-cv-01164 MJP

10

v.

11

FEDEX FREIGHT, INC.,

**PLAINTIFF DAVID GOLDSTINE'S
TRIAL BRIEF**

12

Defendant.

13

14

15

16

17

18

19

20

21

22

23

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - i**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................1

II.     FACTS TO BE PROVED AT TRIAL ...................................................1

        A.      David Goldstine and FedEx Freight, Inc. ........................................1

        B.      Mr. Goldstine Will Not Perform an Unsafe Task ...........................2

        C.      FedEx Disqualifies Mr. Goldstine From Driving ...........................3

        D.      Mr. Goldstine Obtains A New Medical Certification – FedEx Refuses to Accept It................................................................................4

        E.      FedEx Refuses to Return Mr. Goldstine to Work.............................4

        F.      Goldstine Attempts Another Medical Recertification ........................5

        G.      FedEx Bans Mr. Goldstine From Its Premises ...............................5

        H.      Mr. Goldstine Begins Working at Taylor Metal ............................7

III.    ISSUES FOR TRIAL................................................................8

        A.      FedEx Discriminated Against Mr. Goldstine By Disqualifying Him From Driving and Refusing to Return Him To Work Because of His Admitted Physical Impairment. ....................................................8

                1.      Mr. Goldstine Could Perform the Essential Functions of the Road Driver Position With or Without a Reasonable Accommodation. Therefore, He was a "Qualified Individual." ................................................10

                2.      FedEx Took Two Adverse Actions Mr. Goldstine Because of His Disability. ..................................................................11

                        a.      FedEx Disqualified Mr. Goldstine Because of His Disability......11

                        b.      FedEx Kept Mr. Goldstine on Involuntary Unpaid Leave with No Income Because of His Disability................................12

        B.      FedEx Failed to Accommodate Mr. Goldstine. .............................13

                1.      Mr. Goldstine Has an Actual Disability or History of Disability, Which Entitled Him to Accommodation. ...................................14

                2.      Mr. Goldstine Could Perform the Essential Functions of His Job With or Without Reasonable Accommodation. .................................15

                3.      FedEx had Notice of the Need to Accommodate Mr. Goldstine's Disability. ..................................................................16

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - ii
Case No. 2:18-cv-01164-MJP

AKW LAW, P.C.
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

a.   Mr. Goldstine Requested an Accommodation Thereby Triggering FedEx's Duty to Engage in the Interactive Process……………...16

b.   FedEx Had an Affirmative Duty to Engage in the Interactive Process With Mr. Goldstine Once it Learned Of His Physical Disability and Came to Believe, Wrongly, That it Prevented Him From Performing the Essential Functions of His Job…………...17

C.   FedEx Retaliated Against Mr. Goldstine…………………………………20

   1.   FedEx Retaliated Against Mr. Goldstine Under the WLAD…………...20

   2.   FedEx Retaliated Against Mr. Goldstine Under the ADA Entitling Him to Further Equitable Relief………………………………………...21

IV.   DAMAGES…………………………………………………………...…22

A.   Mr. Goldstine Will Present Evidence of Economic Losses and Emotional Distress Proximately Caused by Defendant's Conduct……………………………22

B.   Mr. Goldstine is Entitled to Punitive Damages………………...…………23

V.   AFFIRMATIVE DEFENSES………………………………………...…23

A.   Defendant Cannot Establish Any Affirmative Defenses to Mr. Goldstine's Claims……………………………………………………………………23

   1.   Mr. Goldstine Did Not Fail to Mitigate His Damages……………...…24

   2.   Mr. Goldstine Did Not Fail to Engage in the Interactive Process……….25

   3.   FedEx May Not Raise Any New Affirmative Defenses……………...…26

VI.   ADDITIONAL PRE-TRIAL PROCEDURAL MATTERS…………………………26

A.   The Court Should Exercise Discretion to Allow Vickroy and Raymond to Testify Regarding New Evidence With Plaintiff to Bear Costs…………………………26

B.   Pursuant to Plaintiff's Subpoena, FedEx Must Prepare and Produce a Corporate Representative To testify at Trial……………………………………29

VII.   CONCLUSION…………………………………………………………30

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - iii
Case No. 2:18-cv-01164-MJP

AKW LAW, P.C.
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1

## I.      INTRODUCTION

Plaintiff David Goldstine brings this action against his former employer FedEx Freight, Inc. ("FedEx") for subjecting him to disability discrimination and retaliation in violation of the Americans with Disabilities Act and Washington Law Against Discrimination.

While preparing to make a trip for FedEx one dark and rainy night, Mr. Goldstine did not attempt to climb into a trailer with a severely damaged and un-closeable door due to safety concerns and because he has limited range of motion in his right knee resulting from a past injury.  Seizing on its belief that Mr. Goldstine was disabled, FedEx disqualified him from driving and asserted—wrongly—that federal certification standards justified this action.  Mr. Goldstine voiced concerns that this was discrimination.  Mr. Goldstine underwent another medical examination and received a new one-year medical certification, but FedEx still refused to return him to work.  Because of his perceived disability, FedEx then left Mr. Goldstine on unpaid, involuntary leave for over three months, refused to accept his valid medical certification, and took no steps to find him any other work.

When an employee is able to do his job, an employer may not prevent him from working because of a disability.  When an employer is on notice of an employee's disability, it must engage in the interactive process to identify reasonable accommodations that will allow him to keep working. When an employee voices concerns about discrimination, the employer may not retaliate against him. FedEx violated each of these principles.  The jury will find Defendant FedEx liable for disability discrimination, failure to accommodate, and retaliation in violation of state and federal law.

## II.      FACTS TO BE PROVED AT TRIAL

### A.      David Goldstine and FedEx Freight, Inc.

In 2015, FedEx hired Mr. Goldstine as a Road Driver.  As a Road Driver, Mr. Goldstine drove truck tractors, which pull one or more semi-trailers.  Goldstine's other job duties included performing

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 1
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

pre-trip safety inspections, hooking up semi-trailers, and loading freight.  Mr. Goldstine was based out of FedEx's Everett Service Center.  His shift typically began in the evening and would extend into the following morning.  Mr. Goldstine was an exemplary employee for FedEx, earning the Bravo Zulu Award and a Safety Award in early 2017.

Mr. Goldstine self-reported a record of disability when he started at FedEx.  He has a history of right knee trouble which substantially limited his ability to bend and walk in the past.  He has since had a successful total knee replacement surgery.  Today, Mr. Goldstine's right knee has less range of motion than his left, making it a little harder to bend, but his right knee does not limit him from performing his tasks as a driver. Mr. Goldstine has over 30 years of experience as a truck driver, including over two years for FedEx.  He still works as a commercial truck driver today.

Commercial drivers are required to receive medical certification from a certified medical examiner in compliance with Federal Motor Carrier Safety Administration ("FMCSA") standards.  With knowledge of Mr. Goldstine's history of knee surgery, medical examiner Jon Feldheger, PA-C, at U.S. Healthworks issued Mr. Goldstine a medical certification on March 9, 2017, valid for one year.

**B.     Mr. Goldstine Will Not Perform an Unsafe Task**

On the night of April 6, 2017, FedEx dispatched Mr. Goldstine from Everett to deliver two semi-trailers to Portland.  During his pre-trip safety inspection, he saw that one of the semi-trailers had an open door that was damaged and could not be closed.  Because it was dark and raining, and due to the condition of the broken semi-trailer door, he decided that it would be unsafe to climb into the trailer from ground level and attempt to close the broken door on his own.

Mr. Goldstine called Operations Supervisor Aaron Jessen and told him that he thought it would be unsafe to attempt to close the broken trailer door.  He also told Jessen he was not going to kill himself climbing into the truck in the pouring rain in the dark, especially with the limited range of

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 2
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1     motion in his knee.  Jessen climbed into the semi-trailer and attempted to close the broken trailer door.

2     The door was jammed open.  It is against FedEx rules and federal safety laws to drive a semi-trailer

3     with the door open.  Jessen told Mr. Goldstine to disconnect the broken semi-trailer and take a different

4     one to Portland, which Mr. Goldstine did.

5           The next day, as Mr. Goldstine was clocking in to work, FedEx Operations Supervisor Randy

6     Mott angrily approached him.  Mott demanded to know why Goldstine had not taken the broken semi-

7     trailer.  Mr. Goldstine explained the safety concerns, his knee limitations, and that even Jessen could

8     not close the door.  Mott insisted that Mr. Goldstine had failed to do his job by not attempting to close

9     the door himself.  Goldstine remembers Mott saying, "If you can't do your job because of your

10     disability, you're going to have to find a new job."  Mr. Goldstine told Mott he could do his job and

11     had been doing his job, and that it was not a good idea to discriminate against a disabled worker.  Mott

12     repeated his threat on Goldstine's job.

13     **C.**       **FedEx Disqualifies Mr. Goldstine From Driving**

14           The morning of April 11, 2017, Mr. Goldstine reported Mott's threat on his job and possible

15     disability discrimination to Employee Relations Advisor Christy Tayman.  Goldstine reiterated that he

16     could do his job.  Service Center Manager David Appesland told Mr. Goldstine that he needed to

17     submit written reports about the events of April 6th and 7th or else he would not be allowed to drive

18     FedEx trucks.  Mr. Goldstine submitted his reports that day.  Then, Appesland called and informed

19     him that FedEx was medically de-certifying Goldstine and that he could not drive until he received a

20     new medical certification.  An e-mail from the FedEx corporate office in Arkansas claimed that Mr.

21     Goldstine had to be "medically recertified," because he had an allegedly "disqualifying medical

22     condition(s)," and that Goldstine's "driver number will be deactivated immediately."  FedEx forced

23     Mr. Goldstine onto involuntary unpaid leave indefinitely and refused to allow him to work.

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 3**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

**D.      Mr. Goldstine Obtains A New Medical Certification – FedEx Refuses to Accept It**

Appesland instructed Mr. Goldstine to undergo a new medical examination based on his understanding that Mr. Goldstine stated to other FedEx employees that he could not do his job.  Mr. Goldstine denies telling anyone he could not do his job.  Mr. Goldstine has a history of right knee limitations but this medical condition does not interfere with his ability to do his job.  Mr. Goldstine told Appesland that "discriminating against a disabled worker probably wasn't a good idea."  Appesland replied angrily, "You had better watch it."

On April 13th, Mr. Goldstine underwent another DOT Physical at U.S. Healthworks, again administered by Mr. Feldheger.  Mr. Goldstine again informed Mr. Feldheger of his prior knee surgeries and limited range of motion in his right knee.  Mr. Feldheger tested the knee and again issued Mr. Goldstine another medical certification valid for one year.

**E.      FedEx Refuses to Return Mr. Goldstine to Work**

On April 17, 2017, Safety Assistant Tammy Rogers, who is not a certified medical examiner, wrote to several FedEx management employees via e-mail: "Safety will not be able to approve the physical provided.  The driver failed to list their complete health history (Medical restrictions preventing him from opening and closing trailer door.)"

On April 18th, Mr. Goldstine met with Tayman and Operations Supervisor Kris Hoggatt.  Tayman stated he had a "disqualifying condition" that makes it illegal for him to drive and accused him of hiding his disability.  Mr. Goldstine explained that he had self-identified as disabled when he was hired, that he had no issues performing his job, and that he was being discriminated and retaliated against.  Tayman demanded that he obtain yet another medical re-certification and threatened that she could have him prosecuted for falsifying information.  The meeting was tense.  Mr. Goldstine was deeply offended to be called a "liar."  He wasn't earning income and really needed to get back to work.

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 4
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

During this meeting, Tayman stated Mr. Goldstine could do other work while he waited for another medical certification and promised to get back to him.  She never did.  After not hearing from Tayman regarding other work, and still wanting to work, Mr. Goldstine followed up with other managers at FedEx about alternate work.  No one at FedEx ever followed up to offer him the possibility of performing other work.  He continued to go without a paycheck.

**F.     Goldstine Attempts Another Medical Recertification**

On April 20, 2017, Goldstine returned to U.S. Healthworks to complete yet another medical examination.  This time he met with Dr. Valerie Smith.  After looking at his file, Dr. Smith did not perform the exam and said it was a complete waste of her time and resources as Goldstine's April 13th certification was valid for one year.  Dr. Smith called Supervisor Appesland and told him that Mr. Goldstine had already been cleared to work twice.

On April 24th, Mr. Goldstine e-mailed HR Advisor Tayman asking her to explain what alleged "disqualifying condition(s)" he had that was the basis for FedEx's decision to keep him from driving. Goldstine sent similar e-mails on April 25, 27 and 28, and May 1, 2017.  On April 25th, Mr. Goldstine expressed his frustration to Tayman that his medical disqualification was due to his right knee range of motion limitations.  Tayman told him to tell the medical examiner about his disability in order to obtain a certification that was legally compliant.  But he had already done so on April 13th.

**G.     FedEx Bans Mr. Goldstine From Its Premises**

Then to his surprise, FedEx opened a workplace violence investigation against Mr. Goldstine ostensibly due to his April 7th conversation when his supervisor confronted him for not taking the broken semi-trailer to Portland.  FedEx also contends that there was an anonymous allegation that Mr. Goldstine might have brought a gun to work.  Mr. Goldstine did not physically threaten anyone, and he absolutely did not bring a gun to work.  FedEx Senior Security Specialist Craig Flick conducted

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 5
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

the investigation.  After interviewing witnesses, Flick concluded there was no corroborating evidence of any physical threat and no evidence to support the allegation that Mr. Goldstine had brought a gun to work.  On April 25th, Flick e-mailed his findings to Tayman.  Despite Flick's conclusions that the allegations against Mr. Goldstine were unsubstantiated, FedEx banned Mr. Goldstine from the property.  On April 27th, Appesland e-mailed Mr. Goldstine, "You are NOT to come" to the Everett Service Center "for any reason while this investigation is ongoing."  Mr. Goldstine e-mailed Ms. Tayman to ask what "investigation" was ongoing.  On April 28th, Mr. Goldstine e-mailed Tayman to discuss him doing other work as promised during their April 18th meeting.  FedEx refused to offer other work or accommodation.

Flick was also following up on FedEx's claim that Mr. Goldstine had hidden his medical condition and been banned from the U.S. Healthworks facility.  This was also false.  On May 2, 2017, Flick e-mailed Tayman to inform her that U.S. Healthworks explained that the doctor ended Mr. Goldstine's most recent physical because it was unnecessary not because of any misbehavior by Mr. Goldstine, that Mr. Goldstine was welcome to return to the facility, and that Mr. Goldstine was very upfront about his knee and back issues during his April 13th examination.  Flick also reported to Tayman that, according to U.S. Healthworks, the medical examiner performed very thorough range of motion testing and determined that Goldstine met DOT standards and was certified to drive.  Tayman acknowledged this new information from Flick.

Inexplicably, FedEx continued to insist on another medical certification.  FedEx continued to keep Goldstine out of work as a driver and continued to offer him no alternatives.  On May 3rd, Tayman e-mailed Mr. Goldstine with her advice for obtaining a medical certification that FedEx would accept and admitting that FedEx continued to regard him as disabled.  On May 31st, Mr. Goldstine e-mailed Tayman to inquire about the investigation, address the lack of work and loss of wages, and affirm that

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 6
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   his April 13th certification was valid.  Tayman replied by inaccurately, stating that the April 13th

2   certification was obtained "without disclosing all material medical information for a legitimate re-

3   certification," and that U.S. Healthworks banned him from their facility for aggressive, threatening,

4   and inappropriate behavior.  Tayman also wrote "there still remains no reason for you to visit [FedEx]

5   property."  On June 6, 2017, Mr. Goldstine filed a charge of discrimination against FedEx with the

6   Washington State Human Rights Commission ("WHRC").

7   **H.      Mr. Goldstine Begins Working at Taylor Metal**

8          On June 15, 2017, Mr. Goldstine underwent another medical examination at U.S. Healthworks

9   because he was still trying to return to FedEx.  FedEx still refused to allow him to drive.  FedEx did

10  not allow Mr. Goldstine to do any work since April 11th, Mr. Goldstine earned no income for more

11  than three months while on unpaid, involuntary leave, and FedEx maintained its indefinite ban on

12  Goldstine returning to its premises.  For these reasons, Mr. Goldstine accepted a truck driving job at

13  Taylor Metal on July 8, 2017.  Mr. Goldstine never had any issues performing his truck driving duties

14  at Taylor Metal.  Taylor Metal accepted Mr. Goldstine's DOT medical certification.

15         Now into July 2017, FedEx continued to ban Mr. Goldstine, offer him no alternate work, and

16  refuse to accept his medical certification. Then on July 17th, the WHRC sent notice to FedEx that Mr.

17  Goldstine had filed a discrimination charge.  The next week, months after it knew Mr. Goldstine's

18  April 13th certification was valid, FedEx accepted his June 15th medical certification.  No one sent him

19  an e-mail or left him a detailed message.  Instead, the company sent a letter requiring a signature

20  granting him 48-hours to respond.  Mr. Goldstine didn't receive it.  When he finally did learn that

21  FedEx was accepting his medical certification, Goldstine had already taken another job.  He felt he

22  couldn't go back to FedEx given the way they had treated him. FedEx terminated Goldstine's

23  employment in August 2017 for "failure to return from leave."

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 7**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

In January 2018, Mr. Goldstine accepted another trucking job with Crosson Trucking.  The job also paid less than his job at FedEx.  None of his jobs since FedEx have offered all of the valuable benefits he enjoyed at FedEx.  He has no health insurance and no disability benefits like he once did at FedEx.  In September 2019, Mr. Goldstine was diagnosed with kidney cancer.  He has no health insurance and if he cannot afford surgery to remove the tumor, it will cause the cancer to spread and thus shorten his life.  His close friends worry that he has lost hope since the cancer diagnosis and has fallen into a depression.

### III.    ISSUES FOR TRIAL

The WLAD and ADA generally forbid covered employers from discriminating against individuals because of their disabilities and retaliating because of opposition to discrimination.  42 U.S.C. § 12112(a); RCW 49.60.180, 210*; Riehl v. Foodmaker, Inc*., 152 Wn.2d 138 (2004); *Allison v. Housing Auth. of City of Seattle*, 118 Wn.2d 79, 85-96 (1991).  Three distinct claims (or six in light of the ADA/WLAD distinction) are at issue here, as Mr. Goldstine will establish the following: (1) FedEx discriminated against Mr. Goldstine by disqualifying him and keeping him on unpaid involuntary leave because of his actual or perceived disability; (2) FedEx failed to engage in an interactive process to accommodate his actual disability or his record of disability when the parties could have located other jobs or found a reasonable accommodation that would have enabled him to work; and (3) FedEx retaliated against Mr. Goldstine for voicing concerns about disability discrimination.

**A.    FedEx Discriminated Against Mr. Goldstine By Disqualifying Him From Driving and Refusing to Return Him To Work Because of His Admitted Physical Impairment.**

When an employer relies on an employee's disability in deciding to take adverse action, the plaintiff bears the burden of establishing: (1) he was disabled (as that term is defined) under the ADA/WLAD; (2) he was a "qualified individual"; and (3) he was discriminated against by his

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 8
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1  employer because of that disability.  *Dunlap v. Liberty Nat. Prod., Inc.,* 878 F.3d 794, 798-99 (9th Cir.

2  2017);   Ninth Circuit Model Civil Jury Instructions, §§ 12.1B & 12.1C (2017 ed.) (last updated

3  October 2019); WPI 330.32.

4    The WLAD and ADA are coextensive as to the elements of a disparate treatment disability

5  claim, but they apply different definitions of "disability" and differing causation standards.  Under the

6  WLAD, "disability" includes a "physical impairment that: (i) [i]s medically cognizable or diagnosable;

7  or (ii) [e]xists as a record or history; or (iii) [i]s perceived to exist whether or not it exists in fact."[1]

8  *Taylor v. Burlington N. R.R. Holdings, Inc.*, 444 P.3d 606, 610 (2019) (quoting RCW 49.60.040(7)(a)).

9  A disability can exist regardless of whether it limits the ability to work generally or at a particular job.

10  RCW 49.60.040(7)(b).

11    Under the ADA, "[t]he term 'disability' means, with respect to an individual — (A) a physical

12  or mental impairment that substantially limits one or more major life activities of such individual; (B)

13  a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. §

14  12102(1).  "Under [the ADA Amendments Act ("ADAAA")],

15     An individual meets the requirement of "being regarded as having such an impairment"
   if the individual establishes that he or she has been subjected to an action prohibited

16     under this chapter because of an actual or perceived physical or mental
   impairment *whether or not the impairment limits or is perceived to limit a major life*

17     *activity.*

18  *Nunies v. HIE Holdings, Inc*., 908 F.3d 428, 434 (9th Cir. 2018) (emphasis original) (quoting 42 U.S.C.

19  § 12102(3)(A)).  Whether FedEx held a subjective belief that Mr. Goldstine's impairment substantially

20  limited a major life activity is irrelevant.  *See Nunies*, 908 F.3d at 434 (recognizing that the ADAAA

21

22  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[1] "Impairment" includes, but is not limited to: "Any physiological disorder, or condition, cosmetic disfigurement, or
anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs,

23  respiratory, including speech organs, cardiovascular, reproductive, digestive, genitor-urinary, hemic and lymphatic, skin,
and endocrine. RCW 49.60.040(7)(c).

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 9**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   abrogated the former rule requiring such evidence.).

2   As to causation, the WLAD applies a substantial factor test, *see Mackay v. Acorn Custom*

3   *Cabinetry, Inc.*, 127 Wn.2d 302, 306 (1995), while the Ninth Circuit has adopted the "but for"

4   causation standard for ADA disparate treatment claims, *see Murray v. Mayo Clinic*, 934 F.3d 1101,

5   1105 (9th Cir. 2019).

6   Here, Mr. Goldstine's record of disability is not reasonably in dispute as his testimony and

7   medical records establish a history of knee surgeries that resulted in limited range of motion in his

8   right knee.  In addition, as this Court acknowledged at the summary judgment stage, "it is beyond

9   question that [FedEx] took adverse action against him on the basis of his perceived impairment."

10  Order on Motions for Summary Judgment [Dkt. # 74], 12:1-2.  This Court also held that FedEx's

11  "inability to establish as a matter of law that Plaintiff was medically unqualified to work means that

12  the company is not entitled to resort to 'mandatory federal regulations' as a defense."  *Id.* at 13:1-3.

13  FedEx is nonetheless expected to dispute whether Mr. Goldstine was a "qualified individual," and

14  whether it discriminated against him because of his disability.  Because of the lack of any genuine

15  dispute of fact regarding Mr. Goldstine's record of disability and the perception of his disability,

16  Plaintiff will ask the Court to instruct the jury that Mr. Goldstine is disabled as a matter of law at the

17  close of Defendant's evidence.

18      **1.    Mr. Goldstine Could Perform the Essential Functions of the Road Driver Position**
19           **With or Without a Reasonable Accommodation. Therefore, He was a "Qualified**
             **Individual."**

20  A person is a "qualified individual with a disability" if he "satisfies the requisite skills,

21  experience, education and other job-related requirements of the employment position such individual

22  holds or desires and, with or without reasonable accommodation, can perform the essential functions

23  of such position." 29 C.F.R. § 1630.2(m); 42 U.S.C. 12111(8); *see Dunlap*, 878 F.3d at 798-99; *Kries*

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 10
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   *v. WA-SPOK Primary Care*, *LLC*, 190 Wn. App. 98, 123-126 (2015).

2       The essential functions of the Road Driver position are to drive truck tractors that pull semi-

3   trailers, doing pre-trip safety inspections, hooking up semi-trailers, and loading freight.   Neither

4   closing an un-closeable broken trailer door nor pulling a semi-trailer with its back door open is an

5   essential function of a FedEx Road Driver.  FMCSA standards do not require either of these functions

6   for valid medical certification.  The parties agree that as a Road Driver, Mr. Goldstine was required to

7   have a valid medical certification.   FedEx cannot establish that Mr. Goldstine was medically

8   unqualified to work, but still disputes whether Mr. Goldstine's medical certifications were valid.

9       The evidence will show that Mr. Goldstine was able to open and close functioning trailer doors

10  throughout his time at FedEx.   The evidence will also show that each medical certification Mr.

11  Goldstine received in 2017 was valid.  Even assuming *arguendo* that climbing into a broken semi-

12  trailer on one wet and dark night in April 2017 was an essential functions of his job, a reasonable

13  accommodation would have allowed him to remain employed, as discussed below. *See infra* at p. 13.

14      **2.      FedEx Took Two Adverse Actions Mr. Goldstine Because of His Disability.**

15      FedEx repeatedly stated that it refused to allow Mr. Goldstine to work because he was

16  "disabled," "unable to perform job duties," and lacked "legitimate re-certification."   FedEx's

17  contention that it was entitled to do so under FMCSA standards is pretextual and meritless.

18          **a.      FedEx Disqualified Mr. Goldstine Because of His Disability.**

19      FedEx contends that Mr. Goldstine was unable to perform the essential functions of his job

20  because he stated he had limited range of motion in his right knee among the reasons he did not deliver

21  the broken trailer to Portland.  FedEx argues that its interpretation of this statement entitled it to

22  disqualify Mr. Goldstine from driving under FMCSA standards, admits that it regarded Mr. Goldstine

23  as disabled, and admits that it rejected his medical certification because of his disability.  Each of these

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 11**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    statements is an admission that Defendant disqualified Mr. Goldstine because of his disability.  *See*

2    *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996), *abrogated on other grounds by*

3    *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (where the employer admits it

4    relied on the employee's disability in making the adverse action decision, "the determinative disputed

5    issue will not be the employer's 'intent' but in most cases will be whether the employee is 'otherwise

6    qualified' with or without reasonable accommodation, to perform the job").  FedEx's argument that it

7    rejected Mr. Goldstine's medical certifications because he allegedly failed to disclose required health

8    history information is discriminatory speculation advanced by management employees who are not

9    certified medical examiners.  FedEx's argument that it did not know the nature of Mr. Goldstine's

10   disability, but that it knows he failed to list it in his required health history, is meritless on its face.

11   Rather, FedEx simply assumed Mr. Goldstine could not do his job because of his disability and

12   disqualified him.  The facts here are analogous to those in *Daniel v. Boeing Co.*, where the court

13   criticized Boeing's explanation for placing the plaintiff on light duty, holding:

> There is . . . no evidence in the record to support Boeing's underlying assumptions that plaintiff's disability impacted her job in any way or that she needed an accommodation other than a Tier 1 parking pass. . . . At the time plaintiff was placed on light duty, she was adequately performing her duties . . . she had not requested any changes or accommodations in those duties, and her doctor had twice stated that she was able to perform her job without any medical restrictions.  In effect, Boeing learned that its employee had an unspecified disability and simply assumed that she could not perform certain tasks or hold certain positions.  This is exactly the kind of discriminatory assumption that the ADA was designed to prevent.  The fact that plaintiff has a disability, standing alone and without any indication that the disability affected her job performance, cannot justify disparate treatment in the workplace.

20   764 F. Supp. 2d 1233, 1241-42 (W.D. Wash. 2011).  Here, FedEx likewise disqualified Mr. Goldstine

21   based on the type of discriminatory assumption the ADA and WLAD were designed to prevent.

**b.    FedEx Kept Mr. Goldstine on Involuntary Unpaid Leave with No Income Because of His Disability.**

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 12
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    FedEx took further adverse action against Mr. Goldstine because of his disability when it did

2    not allow him to work while he earned no income for period of time that was unknown to him.  FedEx

3    refused to accept his valid April 13th medical certification despite assurance from U.S. Healthworks

4    of its validity.  No certified medical examiner ever disputed the validity of Mr. Goldstine's medical

5    certifications, but FedEx refused to accept them.  FedEx further refused to acknowledge that the reason

6    the April 20th medical examination was not completed was because the April 13th medical certification

7    was valid.  FedEx then declined to help Mr. Goldstine find other work and banned him from its

8    premises, stating he had no legitimate reason to be there.  FMCSA standards are again no defense.

9    FedEx ignored every medical examiner's determination and instead seized on Mr. Goldstine's record

10   of disability and stated knee limitations.  FedEx required Mr. Goldstine to get a new medical

11   certification because of his perceived disability, and when he did, FedEx rejected it because of his

12   perceived disability, keeping him out of work and without pay indefinitely.

13   Because there is no dispute that FedEx cut off Mr. Goldstine's wages and benefits because of

14   its claimed perception of his physical impairment, Plaintiff will ask the Court to enter a directed verdict

15   in his favor on this disparate treatment claim.

16   **B.     FedEx Failed to Accommodate Mr. Goldstine.**

17   Mr. Goldstine claims failure to accommodate under the WLAD and ADA.  Under the WLAD,

18   an employee is entitled to a reasonable accommodation if he (1) has "an impairment that is medically

19   recognizable or diagnosable or exists as a record or history;" (2) the employee gave the employee

20   "notice of the impairment" or "no notice was required to be given because the employer knew about

21   the employee's impairment;" and  (3) "the impairment had a substantially limiting effect on his ability

22   to "perform his job" or "access equal benefits of employment." WPI 330.33.  In such cases, if the

23   employee "would have been able to perform the essential functions of the job in question with

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 13
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1  reasonable accommodation;" and the employer fails to reasonably accommodate the impairment, the

2  company is liable for failure to accommodate.  *See id.*

3         Similarly, under the ADA, an employee is entitled to a reasonable accommodation if he

4  establishes that he is (1) a "qualified individual;" (2) the employer received "adequate notice" of the

5  employee's disability and desire for a reasonable accommodation; and (3) a "reasonable

6  accommodation is available" that would have enabled the employee to "perform the essential functions

7  of the job."  *See* Ninth Circuit Model Civil Jury Instructions, § 12.7 (2017 ed.) (ADA-Reasonable

8  Accommodation).  Courts have modified the notice requirement in certain cases, as discussed *infra*.

9         **1.      Mr. Goldstine Has an Actual Disability or History of Disability, Which Entitled
               Him to Accommodation.**

10

11        It is undisputed that Mr. Goldstine has a history of a medically diagnosable knee impairment,

12  that he gave notice of his limitations to his employer, and that because he notified his employer about

13  his knee limitations, the employer denied him equal benefits of employment by refusing to let him

14  work due to his disability.  Mr. Goldstine squarely meets the definition of disability under state law.

15  He also meets the definition of disability under federal law.  He has an established record of disability.

16  He has a history of right knee trouble which substantially limited his ability to bend and walk until he

17  had successful knee replacement surgery in 1993.  Ninth Circuit Model Civil Jury Instructions, § 12.1B

18  (2017 ed.) (ADA-Record of Disability Elements).  An employee with a record of disability is entitled

19  to reasonable accommodation.  *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998).

20  Mr. Goldstine also has an actual disability since his knee impairment substantially limits his range of

21  motion thus making it more difficult for him to bend his knee (as one does when climbing, for

22  instance).  Whether the jury finds that Mr. Goldstine had an actual disability or a history of disability,

23  FedEx owed him a duty to reasonably accommodate his disability under the ADA and WLAD.

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 14
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

**2.      Mr. Goldstine Could Perform the Essential Functions of His Job With or Without Reasonable Accommodation.**

FedEx contends that Mr. Goldstine could not perform the essential functions of his job. Whether climbing into the back of a semi-trailer from the ground is an essential function of the Road Driver job is a disputed fact.  Mr. Goldstine does not recall ever being asked to climb into the back of a semi-trailer from the ground at any other time while employed with FedEx.  Nor does his current trucking job or past trucking jobs require him to do so.  But assuming *arguendo* that climbing from the ground into the back of a semi-trailer was an essential function of his job, he will testify that he could do so without accommodation, and that with a reasonable accommodation, it would have been even easier to do so.

Failure to provide a reasonable accommodation "constitutes discrimination unless the employer can demonstrate that such accommodation would result in an undue hardship to the employer's business."  *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 28 (2010) (internal quotations omitted).

The WLAD provides "possible examples" of reasonable accommodations:

(a) Adjustments in job duties, work schedules, or scope of work;
(b) Changes in the job setting or conditions of work;
(c) Informing the employee of vacant positions and considering the employer for those positions for which the employee is qualified.

WAC 162-22-065(2). So does the ADA.  *See* Ninth Circuit Model Civil Jury Instructions, § 12.7 (2017 ed.) (ADA-Reasonable Accommodation);

A necessary component of reasonable accommodation is an interactive, open, and ongoing "exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions."  *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408–09, (1995), *amended* (Sept. 26, 1995).

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 15
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

The interactive process requires (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 779-82 (2011). "As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation." *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989) (analyzing reasonable accommodation claim under the WLAD)).

The evidence will show that there were simple accommodations that would have plausibly enabled Mr. Goldstine to find other work at FedEx. Something as simple as a hand strap to aid in climbing into the truck or backing the trailer up to the loading dock and walking into it from the dock could have resolved any limitations. Failing this, FedEx could have determined what positions Mr. Goldstine was qualified for and reassigned him to a vacant position. These accommodations would not have posed an undue hardship to FedEx. At a minimum, FedEx could have followed up with Mr. Goldstine when he asked about other work while on involuntary unpaid leave.

**3. FedEx had Notice of the Need to Accommodate Mr. Goldstine's Disability.**

FedEx is expected to argue at trial and before this Court that it had no notice of the need to engage in the interactive process with Mr. Goldstine to identify a reasonable accommodation. This argument is factually and legally specious. This Court has already rejected FedEx's claim of lack of notice and should order the company to comport its argument to the jury to the law of the case. *See* Order on Motions for Summary Judgment [Dkt. # 74] 13:13-18.

**a. Mr. Goldstine Requested an Accommodation Thereby Triggering FedEx's Duty to Engage in the Interactive Process.**

Mr. Goldstine requested an accommodation by requesting other work after his disqualification,

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 16
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

thereby triggering the interactive process.  *See Goodman*, 127 Wn.2d at 408–09.  The employer's duty

to engage in the interactive process is a continuing duty which may require more than one attempt at

accommodation.  *See Frisino*, 160 Wn. App. at 781.  Here, FedEx's obligation to engage in the

interactive process was triggered in April 2017 when Mr. Goldstine asked Tayman to assign him other

work while he was decertified.  FedEx therefore had an ongoing duty to engage in the interactive

process – a duty it utterly failed to meet.[2]

> **b.**   **FedEx Had an Affirmative Duty to Engage in the Interactive Process With Mr. Goldstine Once it Learned Of His Physical Disability and Came to Believe, Wrongly, That it Prevented Him From Performing the Essential Functions of His Job.**

In addition to Mr. Goldstine's request for an accommodation, FedEx had an independent duty

to engage in the interactive process starting in April 2017.

Under the WLAD, the employer has a mandatory obligation to investigate the nature and extent

of a disability as part of the interactive process once it knows about an employee's disability.  WPI

330.33 ("[N]o notice was required to be given [to trigger reasonable accommodation duty] because

the employer knew about the employee's impairment…").[3]

The ADA also carries with it a duty to accommodate, which is "triggered either by the

employee's request for accommodation or by the employer's recognition of the need for

accommodation."  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000).  The duty to

---

[2] FedEx claims that it attempted to help Mr. Goldstine obtain medical re-certification.  To the extent this was an attempt at accommodation, it failed insofar as FedEx refused to accept Mr. Goldstine's valid April 13th certification.  As this was not effective in returning Mr. Goldstine to work, FedEx had a duty to make additional attempts at accommodation.  But rather than continuing to engage in the ongoing interactive process, FedEx forced Mr. Goldstine to linger on unpaid involuntary leave.  It remained non-responsive to his requests to return to paid work and banned him from its premises.

[3] *See also Goodman*, 127 Wn.2d at 408; *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 671 (1994) (knowledge of a medical condition which impacts work is sufficient notice to trigger interactive process); *Martini v. Boeing Co.*, 88 Wn. App. 442, 457 (1997) (knowledge that employee suffered from major depression not required to trigger duty to investigate); *Kimbro*, 889 F.2d at 875, 877 n.6 (interpreting the WLAD and finding notice sufficient where supervisor was aware of medical condition for which employee was receiving treatment).

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 17**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

accommodate is triggered once the disability is *known*, not once a formal accommodation request is made. Indeed, the regulations interpreting the ADA explain that to determine an appropriate accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the individual." 29 C.F.R. § 1630.2(o). This Court has already held that the duty to accommodate (and thus engage in the interactive process) was triggered by FedEx's "belief that Plaintiff was claiming a disability." *See* Order on Motions for Summary Judgment [Dkt. # 74] 13:13-18. In so holding, this Court followed every Circuit Court in the country to consider an employer's duty to accommodate an obvious disability.[4]

The duty accommodate exists even when the employee insists he *does not* need an accommodation. The Second Circuit's decision in *Brady v. Wal-Mart Stores, Inc*. is instructive. The case involved an employee with cerebral palsy. Brady's disability was apparent, as he walked

---

[4] *See, e.g., Humphrey*, 239 F.3d at 1137 ("Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."); *Dunlap v. Liberty Nat. Prod., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017) (employer with "ample notice" of employee's limitations and "reason to be aware" of the need for a reasonable accommodation had duty to engage in the interactive process even if employee did not expressly request accommodation); *see also Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135-36 (2d Cir. 2008); *Kowitz v. Trinity Health*, 839 F.3d 742, 748 (8th Cir. 2016) (holding duty to accommodate arises when, under the circumstances, the employer can be fairly said to know of both the disability and the need for an accommodation, and no precise words are required). *See also Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) ("Where the employee's disability is known to the employer, the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."); *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 594–95 (5th Cir. 2016) (where employer has actual notice of disability and limitations, plaintiff is excused from requesting accommodation); *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (notice of disability and known limitations triggers interactive process); *Lessard v. Osram Sylvania, Inc.*, 175 F.3d 193, 199 (1st Cir. 1999) ("In the context of 'reasonable accommodation' and as to 'known disabilities,' employers are encouraged to engage in an 'interactive process' with the individual."); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998) (notice of disability triggers interactive process); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285-87 (7th Cir. 1996) (duty to engage in interactive process triggered when employer knew of disability and of the need for accommodation even where employee failed to specifically ask for accommodation); *Hodgetts v. City of Venice, Fla.*, 794 F. Supp. 2d 1265, 1275 (M.D. Fla. 2011) (employer has obligation to accommodate "obvious" disabilities). *Cf. Chenari v. George Washington Univ.*, 847 F.3d 740, 748 (D.C. Cir. 2017) (citing *Pierce v. District of Columbia*, 128 F.Supp.3d 250, 269–70 (D.D.C. 2015)) (prison must accommodate "obviously disabled" inmate even if inmate does not request accommodation). *See also Dorsey v. CHS, Inc.*, 15-CV-02735-RBJ, 2017 WL 1356093, at *6 (D. Colo. Apr. 13, 2017) (holding that a reasonable juror could conclude that the employer's knowledge of the disability, supervisor's expressed concerns about the disability, and failure of the plaintiff's obvious manifestations to improve triggered employer's duty to engage in interactive process despite absence of affirmative request for accommodation from employee).

---

**PLAINTIFF DAVID GOLDSTEIN'S TRIAL BRIEF - 18**
Case No. 2:18-cv-01164-MJP

1   "noticeably slower" with a "shuffle and limp," and his speech was "recognizably slower and quieter."

2   531 F.3d at 130.  His supervisor regarded him as slow and she "knew there was something wrong"

3   with him.  *Id*. at 134.  Frustrated with the limitations of his disability, she had him transferred out of

4   her department because he "wasn't fit for the job."  *Id*.  A jury found that Wal-Mart failed to

5   accommodate his disability.  The employer appealed.  *Id*. at 132.

6       Wal-Mart argued that the district court erred because Brady never requested an

7   accommodation for his cerebral palsy *and did not think he needed one*.  *Id.* at 134.  Wal-Mart argued

8   by implication that there is no duty to accommodate the known disabilities of employees who do not

9   know they can or should request an accommodation.  The Second Circuit disagreed.  The Court first

10  found that it was consistent with the ADA to require accommodation of known disabilities:

11      Application of this general rule [that a request for accommodation is a prerequisite to
        liability for failure to accommodate] is not warranted, however, where the disability is
12      obvious or otherwise known to the employer without notice from the employee. The
        notice requirement is rooted in common sense.
13      Obviously, an employer who acts or fails to act without knowledge of a disability
        cannot be said to have discriminated based on that disability. Moreover, the notice
14      requirement prevents an employee from keeping her disability a secret and suing later
        for failure to accommodate. These concerns are not relevant when an employer has
15      independent knowledge of an employee's disability.

16  *Id.* at 135 (quoting *Felix v. N.Y.C. Trans. Auth.*, 154 F.Supp.2d 640, 657 (S.D.N.Y. 2001)).

17      The Second Circuit further explained:

18      Indeed, a situation in which an employer perceives an employee to be disabled but the
        employee does not so perceive himself presents an even stronger case for mitigating
19      the requirement that the employee seek accommodation. In such situations, the
        disability is obviously known to the employer, while the employee, because he does
20      not consider himself to be disabled, is in no position to ask for an accommodation. A
        requirement that such an employee ask for accommodation would be tantamount to
21      nullifying the statutory mandate of accommodation for one entire class of disabled (as
        that term is used in the ADA) employees.
22
    *Id.*  The Court affirmed the jury verdict.
23

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 19
Case No. 2:18-cv-01164-MJP

AKW LAW, P.C.
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1      Mr. Goldstine, like the plaintiff in *Brady*, did not believe he needed an accommodation to

2  perform his job.  FedEx heard Mr. Goldstine explain that he had a limited range of motion in his knee,

3  reviewed his medical certifications that revealed his history of knee surgery, and with this knowledge,

4  believed he was so substantially limited in his ability to perform his job that it then disqualified him

5  from performing his Road Driver duties.  At this point, FedEx had an obligation to engage in an

6  "interactive process" with Mr. Goldstine to assess whether a reasonable accommodation was necessary

7  to allow him to continue working either as a Road Driver or in some other capacity.  These facts state

8  a violation of the duty to accommodate under the WLAD and ADA.

9  **C.      FedEx Retaliated Against Mr. Goldstine**

10      To establish a claim of retaliation under the WLAD, the plaintiff has the burden of showing

11  that he or she engaged in a statutorily protected activity and that this was a substantial factor in the

12  employer's decision to take an adverse employment action.  *See* WPI 330.05.  The WLAD prohibits

13  retaliation for opposing "conduct that was at least arguably a violation of the law."  *Estevez v. Faculty*

14  *Club of Univ. of Wn.*, 129 Wn. App. 774, 798 (2005).

15      **1.      FedEx Retaliated Against Mr. Goldstine Under the WLAD**

16      FedEx retaliated against Mr. Goldstine for his opposition to discrimination.  Mr. Goldstine

17  engaged in opposition activity when he voiced his concerns to Operation Supervisor Mott about

18  disability discrimination, when he reported to Employee Relations Advisor Tayman about Mott's

19  disability discrimination, when he voiced his concerns to Center Service Manager Appesland about

20  disability discrimination, when he told to Tayman about disability discrimination again during their

21  April 18th meeting, and when he informed FedEx that he had retained legal counsel to assist him in

22  protecting his right to be free of disability discrimination.  As FedEx did not hide that its refusal to

23  allow Mr. Goldstine to return to work was because of his disability, his complaints were made in

1   opposition to what he reasonably believed to be unlawful conduct.

2       The evidence will show that Mr. Goldstine's opposition activities were a substantial factor in

3   the decision to prevent him from working and earning no income for an unknown period of time.  His

4   complaints that he was being discriminated against because of his disability were met with threatening

5   responses.  Operations Supervisor Mott said, "If you can't do your job because of your disability, you

6   need to find another job,"  Service Center Manager Appesland angrily said, "You had better watch it,"

7   and Employee Relations Advisor Tayman threatened to have him prosecuted for allegedly falsifying

8   information.  After Mr. Goldstine began to raise concerns about discrimination, he was subject to

9   investigation, banned from the premises, and FedEx refused to accept his April 13th medical

10  certification on pretextual grounds while FedEx knew of its validity.

11      **2.      FedEx Retaliated Against Mr. Goldstine Under the ADA Entitling Him to Further Equitable Relief.**

12      In the Ninth Circuit, ADA retaliation claims are redressable only by equitable relief.  *See*

13  *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009).  Accordingly, no jury trial is

14  available.  *Id.*  The available remedies:

15          [M]ay include, but [are] not limited to, reinstatement or hiring of employees, with or
16          without back pay (payable by the employer, employment agency, or labor organization,
            as the case may be, responsible for the unlawful employment practice), or any other
17          equitable relief as the court deems appropriate. . .

18  *Id.* at 1264 (quoting 42 U.S.C. § 2000e–5(g)(1) (listing further limits on backpay remedies)). Because

19  there is no jury trial for ADA retaliation, Mr. Goldstine will ask this Court to order his reinstatement

20  or front pay if the jury does not award adequate front pay compensation for his other legal claims.

21      A showing of "but for" causation between the protected activity and adverse action is required

22  for ADA retaliation claims.  *See T.B. v. San Diego Unified Sch. Dist.*, 795 F.3d 1067, 1088 (9th Cir.

23  2015), *cert. denied*, 136 S. Ct. 1679 (2016).  Here, but for Mr. Goldstine's opposition activities, as

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 21**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

discussed *supra*, he would not have been subjected to adverse action.

## IV.    DAMAGES

**A.    Mr. Goldstine Will Present Evidence of Economic Losses and Emotional Distress Proximately Caused by Defendant's Conduct.**

At trial, Mr. Goldstine will seek compensatory damages, including damages for lost wages, lost benefits, front pay, and emotional distress. Mr. Goldstine worked at lesser-paying jobs starting on July 8, 2017. Mr. Goldstine seeks lost wages and retirement benefits including front pay. Dr. Christina Tapia, an expert witness, will present evidence of Mr. Goldstine's economic damages at trial. Initially, Dr. Tapia calculated the present-day value of lost wages and retirement benefits as $255,655 and $32,478 respectively. However, this figure is based on an average retirement age of 62.8 years old. Mr. Goldstine is now 54 years old. Mr. Goldstine is expected to testify that when he started at FedEx in 2015, he intended to work at FedEx until he is 72 years old. As such, Dr. Tapia is expected to supplement her disclosure to provide corresponding calculations.

Mr. Goldstine is also entitled to the lost value of his health, disability benefits, life insurance, and other fringe benefits. When he was placed on involuntary leave, Mr. Goldstine lost these benefits. Had Mr. Goldstine not lost his health insurance coverage, he would have had these benefits when he needed then most. Should he become disabled he would be entitled to disability benefits. A corporate designee will testify concerning the nature of Goldstine's lost benefits.

Mr. Goldstine is also entitled to emotional distress damages. A persistently hard worker who landed a job he was hoping to retire at, Mr. Goldstine was devastated and panicked when he realized FedEx would not accept his valid medical certifications or allow him to work. Throughout his entire period of disqualification until he could no longer afford to be without any income, Mr. Goldstine wanted nothing more than to return to work. His unpaid, involuntary leave—prolonged indefinitely

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 22
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    despite valid medical certifications—was unbearable. Mr. Goldstine intends to call two close friends,

2    Teri Vickroy and Dennis Raymond, to testify regarding their observations of his emotional harms. *See*

3    *discussion infra.*

4    **B.**    **Mr. Goldstine is Entitled to Punitive Damages.**

5           An employer may be liable for punitive damages when it "discriminate[s] in the face of a

6    perceived risk that its actions will violate federal law." *Passantino v. Johnson & Johnson Consumer*

7    *Products, Inc.*, 212 F.3d 493, 514-15 (9th Cir. 2000) (quoting *Kolstad v. American Dental Ass'n*, 527

8    U.S. 526, 536 (1999); *Kuper v. Empire Blue Cross & Blue Shield,* No. 99 CN. 1190, 2003 WL 359462,

9    at *5 (S.D.N.Y. Feb. 18, 2003) (affirming $200,000 punitive damage jury award for disabled employee

10    fired for reasons jury found were pretextual). Here, given FedEx's obsessive focus on Mr. Goldstine's

11    disability and pretextual attempts to hide behind FMCSA standards, Mr. Goldstine will establish

12    punitive damages under the ADA. Under statutory caps imposed by the ADA, the total combined

13    compensatory and punitive damages award against a company with more than 500 employees cannot

14    exceed $300,000. 42 U.S.C. § 1981a(b)(3). Any remaining compensatory award may be recovered

15    under the WLAD. *See Passantino*, 212 F.3d at 509-510 (holding that where federal employment

16    statutes impose recovery caps, a jury award exceeding those caps may be recovered under the WLAD

17    because it has no such caps).

18                 **V.**    **AFFIRMATIVE DEFENSES**

19    **A.**    **Defendant Cannot Establish Any Affirmative Defenses to Mr. Goldstine's Claims.**

20           In addition to claiming that Mr. Goldstine was not a qualified individual with a disability and

21    that it was under no obligation to offer any accommodations, FedEx asserts that Mr. Goldstine failed

22    to mitigate his damages and failed to engage in the interactive process.

23

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 23**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

**1.      Mr. Goldstine Did Not Fail to Mitigate His Damages.**

FedEx asserts that Mr. Goldstine did not mitigate his damages.  This is simply not accurate. Immediately after his disqualification, Mr. Goldstine did everything he could to get re-certified and return to work.  He made three separate attempts at medical re-certification and persistently asked FedEx what he needed to do to satisfy its subjective demands.  As his unpaid involuntary leave dragged on from weeks to months and he still received no response to his request to FedEx for other work, Mr. Goldstine needed to find other work on his own to earn an income.  He searched for other work and obtained it on July 8, 2017.  He has worked continuously since that time.  While these other positions pay less than FedEx, they do not discriminate against him because of his knee condition.

FedEx asserts its failure to mitigate damages defense based on its claim that the company eventually accepted Mr. Goldstine's medical certification and attempted to return him to work in August 2017 when it sent a certified letter he did not receive requiring a response within 48 hours.  By that time, Mr. Goldstine had begun another job.  FedEx faults Mr. Goldstine's decision not to return when he eventually learned of the possibility.  The duty to mitigate damages "only requires the plaintiff to act as a reasonable person would.  'If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen.'"  *Cobb v. Snohomish County*, 86 Wn. App. 223, 230 (1997) (quoting *Hogland v. Klein*, 49 Wn.2d 216, 221 (1956)).  An offer of reinstatement may limit a wrongfully discharged employee's right to lost wages, but only where the offer was reasonable.  *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-232 (1982); *Ortiz v. Bank of America*, 852 F.2d 383, 387 (9th Cir 1987).

A former employee's right to lost wages is not limited by a rejected offer of reinstatement if the employee was "reasonable" in refusing the offer.  *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 500 (1993), *amended*, 122 Wn.2d 483 (1994); *Ortiz*, 852 F.2d at 387.  An offer of

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 24
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

reinstatement is "unreasonable" where (1) the conditions between employee and employer have become sufficiently hostile or antagonistic, including where conditions have deteriorated due to litigation, *see Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1319 (9th Cir. 1982); or (2) the employee reasonably believes discriminatory working conditions would persist, *see Smith v. World Ins. Co*., 38 F.3d 1456, 1464 (8th Cir. 1994).  Whether the employee "reasonably" rejected an offer of reinstatement is a question of fact for the jury.  *Kastanis*, 122 Wn.2d at 500; *see also Fiedler v. Indianhead Truck Line, Inc*., 670 F.2d 806, 808 (8th Cir. 1982).

To the extent the facts here are analogous to a termination and offer of reinstatement, the evidence will show that Mr. Goldstine's refusal to return to FedEx was reasonable.  First, Mr. Goldstine was employed as a truck driver for another company when the offer was made.  Second, the offer of reinstatement was made because FedEx received notice of Mr. Goldstine's WHRC complaint and wanted to reduce his economic damages—not because FedEx intended to remedy its discriminatory practices.  FedEx repeatedly discriminated against Mr. Goldstine because of his disability and made no attempts to remedy its discriminatory conduct.  It is not reasonable to expect Mr. Goldstine to return to FedEx's discriminatory work environment.  Furthermore, FedEx is expected to assert it communicated with Mr. Goldstine's counsel to discuss its offer to return him to work.  But by this time, conditions had become hostile and antagonistic so as to make the choice not to return to FedEx reasonable.

### 2. Mr. Goldstine Did Not Fail to Engage in the Interactive Process.

FedEx asserts as a defense to liability on Mr. Goldstine's failure to accommodate claims that he failed to engage in the interactive process.  The evidence will show FedEx is responsible for any breakdown in the interactive process.  In the interactive process, "[b]oth sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." *Barnett*,

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 25
Case No. 2:18-cv-01164-MJP

AKW LAW, P.C.
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1  228 F.3d at 1114-15.

2      Mr. Goldstine self-disclosed his record of disability when he started working at FedEx in 2015,

3  stated he had limited range of motion in his right knee in April 2017, repeatedly asked FedEx how to

4  obtain a medical certification it would accept, and repeatedly asked to return to driving or be given

5  other work.  FedEx in turn refused to accept his valid April 13th medical certification, banned him

6  from its premises, did not respond to him about other work, and did not contact him between May 3

7  and May 31, 2017.  FedEx also argues Mr. Goldstine failed to engage in the interactive process when

8  he did not respond to its voicemails and letter in late July and early August 2017.  But by the time

9  FedEx attempted to return him to work (if that is indeed what they were half-heartedly attempting),

10  FedEx had already broken down the interactive process through its repeated delays and obstruction,

11  its denial of three months of pay, terminating his benefits, and forcing Mr. Goldstine to take another

12  job.  FedEx owed Mr. Goldstine an interactive process to find any reasonable option to keep him

13  working as of April 7, 2017.  The company utterly failed him, despite Mr. Goldstine's continuous

14  efforts to engage the company until he finally accepted another job.

15      **3.    FedEx May Not Raise Any New Affirmative Defenses**

16      FedEx may not raise any other affirmative defense on which it bears the burden of proof,

17  including bona fide occupational qualification or compliance with other law.  At summary judgment,

18  the Court ordered that FedEx's catch-all "in case we think of anything else" provision be stricken and

19  held that FedEx is not entitled to resort to "mandatory federal regulations" as a defense.  *See* Order on

20  Motions for Summary Judgment [Dkt. # 74], 10:1-4; 13:1-3.  Therefore, FedEx's attempt to add

21  additional defenses in its proposed jury instructions should be denied.

22      **VI.    ADDITIONAL PRE-TRIAL PROCEDURAL MATTERS**

23  **A.    The Court Should Exercise Discretion to Allow Vickroy and Raymond to Testify**

**Regarding New Evidence With Plaintiff to Bear Costs.**

On November 15, 2019, Mr. Goldstine served supplemental disclosures naming close friends and lay witnesses Teri Vickroy and Dennis Raymond.  Plaintiff acknowledges that these are late disclosed witnesses.  To avoid any prejudice, on November 18th, Plaintiff's counsel offered to make these witnesses available for deposition at Plaintiff's expense.  Defense counsel did not accept this offer and is objecting to them testifying at trial.  If allowed to testify, Ms. Vickroy and Mr. Raymond will testify regarding Mr. Goldstine's harms and losses as a result of his employment and separation from FedEx.  In particular, both will testify about the sense of hopelessness Mr. Goldstine feels now facing cancer without adequate health coverage after losing his job because of a disability when he could have done his job at FedEx.  These witnesses should be permitted to testify.

Mr. Goldstine was diagnosed with kidney cancer in September 2019.  Prior to his diagnosis, Mr. Goldstine considered himself a strong person capable of caring for himself, but now with his recent cancer diagnosis, he is learning that relying on others and seeking others help is truly important and paramount, and it would be very helpful to the jury to understand his non-economic damages if these two long-time friends were allowed to testify.  Mr. Goldstine's recent cancer diagnosis has caused many changes in him, and allowing these late disclosed witnesses would be equitable, and there is no prejudice to defense.

Ms. Vickroy and Mr. Raymond are prepared to sit for deposition immediately, at Defendant's scheduling convenience, reasonable costs to be paid by Plaintiff.  In addition, Plaintiff will agree to provide witness statements for Ms. Vickroy and Mr. Raymond.

Federal law grants "particularly wide latitude to the district court's discretion" to act pursuant to Rule 37(c)(1) and admit or exclude witnesses after the disclosure deadline.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  As part of its initial disclosures, a

1   party must provide "the name and, if known, the address and telephone number of each individual

2   likely to have discoverable information."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Information not originally

3   produced or supplemented under Rules 26(a) or (e) may be allowed at trial if the delay is "substantially

4   justified or is harmless."  *See* Fed. R. Civ. P. 37(c)(1).

5        The Ninth Circuit has recognized that "evidence preclusion is, or at least can be, a 'harsh[

6   ]' sanction."  *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (holding

7   that when a sanction amounts to dismissal of a claim, the district court is required to consider whether

8   the claimed noncompliance involved willfulness, fault, bad faith, and the availability of lesser

9   sanctions); *see also Jones v. City of Seattle*, 179 Wn.2d 322, 338 (2013), *as corrected* (Feb. 5, 2014)

10  (state court holding under Superior Court Civil Rules "when imposing a severe sanction such as

11  witness exclusion, 'the record must show three things-the trial court's consideration of a lesser

12  sanction, the willfulness of the violation, and substantial prejudice arising from it.' (quoting *Mayer v.*

13  *Sto Indus., Inc.*, 156 Wn.2d 677, 690 (2006) (listing sanctions that affect a party's ability to present its

14  case)).  In *Yeti*, the Ninth Circuit held that the district court did not abuse its discretion in excluding

15  the defendant's late-disclosed expert because "[t]o respond to it, plaintiffs would have had to depose

16  [the expert] and prepare to question him at trial."  *Yeti*, 259 F.3d at 1107.

17       Here, the late disclosure of Ms. Vickroy and Mr. Raymond is substantially justified because

18  his recent cancer diagnosis has altered Mr. Goldstine's outlook on life and changed his disposition.

19  While it is not the fault of FedEx that Mr. Goldstine has life-threatening cancer, it is the company's

20  fault that Mr. Goldstine is not equipped with the life-saving health insurance and financial security he

21  needs from the robust benefits FedEx would be providing now had he not lost his job.  Mr. Goldstine

22  has identified these two close friends because they know him well and can describe their observations

23  of his pain and fear in a way that Mr. Goldstine would be unable to do for himself on the witness stand

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 28
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219ᵗʰ St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

because the fear is so close and the stakes are so high.  At most, each witness would testify at trial for no more than one hour.  Admitting these witnesses is harmless where Plaintiff is offering to allow depositions of Ms. Vickroy and Mr. Raymond immediately at his own cost and to provide witness statements.

**B.  Pursuant to Plaintiff's Subpoena, FedEx Must Prepare and Produce a Corporate Representative To testify at Trial**

On November 22, 2019, Plaintiff served a Subpoena to Appear and Testify at Trial in a Civil Action as Corporate Representative, listing 16 topics on which FedEx's corporate representative is to testify at trial.  Trial courts have enforced subpoenas to corporations requiring a corporate representative to attend trial.  *See HTC Corp. v. Tech. Properties Ltd.*, 5:08-CV-00882-PSG, 2013 WL 12166376, at *2 (N.D. Cal. Sept. 20, 2013) (citing *Conyers v. Balboa Ins. Co.*, 8:12-CV-30-T-33 EAJ, 2013 WL 2450108, at *1 (M.D. Fla. June 5, 2013) (declining to quash a Rule 45 subpoena served on an unnamed corporate representative)); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 303 (S.D.N.Y. 2009) ("the Court has the power to require [] parties to produce corporate representatives to testify on their behalf at trial"); *Williams v. Asplundh Tree Expert Co.*, 3:05CV479J33MCR, 2006 WL 2598758, at *2 (M.D. Fla. Sept. 11, 2006).  A subpoena on a corporation requiring its representative to testify at trial designates the matters of inquiry for which it is to prepare and produce a witness.  See *Conyers*, 2013 WL 2450108 at *1 (approving subpoena listing matters of "affirmative defenses, discovery responses, claim denial and selection of engineers"); *Aristocrat Leisure*, 262 F.R.D. at 296 n.2 (approving subpoena on corporation "listing testimony topics"); *Asplundh Tree*, 2006 WL 2598758 (approving subpoena commanding trial attendance of corporate representative on earnings, balance sheets, a letter, and prior similar claims).

PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 29
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    Mr. Goldstine has already deposed FedEx-designated representatives during discovery

2  pursuant to 30(b)(6).  FedEx named five separate individuals as corporate representatives.  All but one

3  of these witnesses reside out of state.  In addition, more than nine current and former FedEx employees

4  had a hand in the discrimination and retaliation against Mr. Goldstine.  It is not burdensome on FedEx

5  to prepare and produce already prepared corporate representatives on pre-identified topics.  But it is

6  burdensome on Mr. Goldstine to call numerous individuals during a five-day trial or to wait to see

7  who Defendant may call in its case in chief while risking a Rule 50 motion at the close of his evidence.

8    Here, where courts have approved use of a trial subpoena to require a corporate defendant to

9  prepare and produce a corporate representative on certain topics, the Court should follow this time-

10 saving practice.  This Court is empowered to and should command FedEx's compliance.  In the

11 alternative, Plaintiff should be allowed to designate additional corporate designee testimony to be read

12 at trial.

13                              **VII. CONCLUSION**

14    FedEx's decision to disqualify Mr. Goldstine from driving based on his disability, refusal to

15 return him to work after he received a new valid medical certification, without helping him find other

16 jobs, and after he voiced concerns about discrimination, will establish in the minds of the jurors that,

17 more likely than not, FedEx acted based on illegal prejudice and stereotypes about people with

18 disabilities.  Mr. Goldstine values the opportunity to appear before the Court, to have the evidence

19 fairly evaluated and appropriately admitted, and to have a just outcome reached by the jury.

20 **DATED** November 25, 2019.

21 **AKW LAW, P.C.**                          **BLOOM LAW PLLC**

22

   /s/ Ada K. Wong                          /s/ Beth Bloom
23 /s/ Jordan T. Wada                        Beth Bloom, WSBA #31702

1    Ada K. Wong, WSBA #45936                    Attorneys for Plaintiff David Goldstine
     Jordan T. Wada, WSBA #54937                 3827C South Edmunds Street
2    Attorneys for Plaintiff David Goldstine     Seattle, Washington 98118
     6100 219th St. SW, Suite 480                Tel.: (206) 323-0409
3    Mountlake Terrace, WA 98043                 E-mail:  bbloom@bloomlawpllc.com
     Tel.: (206) 259-1259
4    Fax: (855) 925-9529
     E-mail: ada@akw-law.com
5    E-mail: jordan@akw-law.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on November 25, 2019, I caused to be electronically filed the

3 foregoing document with the Clerk of the Court using the CM/ECF system, which will send

4 notification of such filing to the following:

5      Medora A. Marisseau
       Karr Tuttle Campbell
6      701 Fifth Avenue, Ste. 3300
       Seattle, WA 98104
7      E-mail: MMarisseau@karrtuttle.com
       E-mail: jlikit@karrtuttle.com
8
       Donald H. Snook, TN Bar #21775
9      FedEx Freight, Inc.
       1715 Aaron Brenner Drive, Suite 600
10     Memphis, TN 38120
       E-mail: Donald.snook@fedex.com
11     *Counsel for Defendant FedEx Freight, Inc.*

12     Beth Bloom, WSBA #31702
       Attorney for Plaintiff
13     3827C South Edmunds Street
       Seattle, WA 98118
14     Tel.: (206) 323-0409
       E-mail:  bbloom@bloomlawpllc.com
15     *Co-counsel for Plaintiff David Goldstine*

16

17     I declare under penalty of perjury under the laws of the state of Washington that the

18 foregoing is true and correct.

19 Dated this 25th day of November, 2019, at Mountlake Terrace, Washington.

20

21                              */s/ Kaila A. Eckert_____
                               Kaila A. Eckert, Paralegal

22

23

**PLAINTIFF DAVID GOLDSTINE'S TRIAL BRIEF - 32**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529