1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

DAVID GOLDSTINE,

CASE NO. C18-1164 MJP

11

Plaintiff,

ORDER ON PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT

12

v.

13

FEDEX FREIGHT INC,

14

Defendant.

15

16

The above-entitled Court, having received and reviewed:

17

1.  Plaintiff's Motion for Partial Summary Judgment re: Disparate Treatment and Failure

18

to Accommodate (Dkt. No. 186),

19

2.  Defendant's Response to Plaintiff's Motion for Partial Summary Judgment re:

20

Disparate Treatment and Failure to Accommodate (Dkt. No. 193),

21

3.  Plaintiff's Reply re: Motion for Partial Summary Judgment re: Disparate Treatment

22

and Failure to Accommodate (Dkt. No. 205),

23

24

4.   Defendant's Surreply in Support of Its Opposition to Plaintiff's Motion for Partial

Summary Judgment  (Dkt. No. 210),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is DENIED.

### Background

Plaintiff was employed by Defendant FedEx Freight ("FXF") as a Road Driver.  Under

the regulations (Federal Motor Carrier Safety Act. 49 C.F.R. 300 *et seq.*; "FMCSA") which

govern the industry, drivers must be medically qualified to drive, which they establish by

periodic physical examination.  49 C.F.R. § 391.41, 391.43.  Plaintiff self-identified as disabled

when he applied for the job.  Dkt. No. 68-2, "Voluntary Self-Identification of Disability."

Plaintiff was medically qualified to drive on February 2, 2017, but the qualification was

only valid for three months (the examining doctor was concerned about his glucose levels and

wanted him to return in three months for a recheck of his blood sugar).  Dkt. No. 61-2, Ex. 1.

Plaintiff then underwent a follow-up Department of Transportation ("DOT") physical on March

9, 2017 which qualified him for one year.  At the time of the February exam, he disclosed a

"right knee" condition (the nature of the condition was not specified).  Id.

On April 6, 2017, Plaintiff was assigned a run from the FXF depot in Everett,

Washington to the Portland, Oregon Service Center.  The trailer he was assigned had a broken

(unclosed) door, and Plaintiff declined to climb into the trailer (from ground level) to close it;

Plaintiff alleges (1) he could see the door was jammed open, thus could not be closed, and (2)

conditions were dark and rainy and (in his opinion) unsafe.  Dkt. No. 68, Decl. of Goldstine, ¶¶

17-19.  Plaintiff told his Operations Supervisor (Jessen) that it would be unsafe to drive the

trailer with an open door and that, because he had limited range of motion in his right knee he

was not going to risk climbing into the trailer in the dark (on a rainy night) to fix it.  Jessen

himself tried unsuccessfully to close the door, then told Plaintiff to take another empty trailer, which Plaintiff did.  (Id., ¶¶ 20-22.)  In a discussion with Supervisor Randy Mott the following day, Plaintiff explained that he had not attempted to close the trailer door because of safety concerns, and (according to Mott) implied that a bad knee and a bad back had also factored into the decision.  Dkt. No. 197, Decl. of Mott, ¶ 5.[1]

On the basis of his stated physical limitation, Plaintiff was told by the Service Center Manager at his station (Appesland) that he would be medically decertified (Dkt. No. 68, Decl. of Goldstine at ¶ 39) and required to obtain a new DOT medical certification to confirm that he was qualified to drive.  Dkt. No. 187-19, Depo. of Appesland, 104:16-105:8.

On April 13, 2017, Plaintiff underwent a DOT medical certification exam.  Dkt. No. 188, Decl. of Feldheger, Ex. A.  The Medical Examination Report Form which Plaintiff filled out prior to the exam noted his history of leg problems, and contained a handwritten explanatory note stating "don't have full ROM [Range of Motion] of rt knee."  The examining Physician's Assistant (PA Feldheger) reported that he performed a close examination of Plaintiff's knees and back, documented reduced flexion in his right knee, but found the range of knee flexion not to be disqualifying.  Id., ¶¶ 11, 13.  PA Feldheger certified Plaintiff as qualified to work as a commercial truck driver.  Id., ¶ 14.

Defendant rejected the April 13 DOT certification; FXF's Safety Assistant (Rogers) explained that "Safety will not be able to approve the physical provided" based on her belief that the "driver failed to list their complete health history (Medical restrictions preventing him from opening and closing trailer door)."  Dkt. No. 67-2.  Not even a follow-up conversation with the director (Dr. Hoffman) of the clinic where Plaintiff was examined, who had reviewed the

---

[1] Plaintiff reports telling Mott he had "limitations."  Decl. of Goldstine, ¶ 25.

examination and attested to the validity of the medical certification, was sufficient to dissuade Defendant from refusing to recertify Plaintiff. Dkt. No. 67-6; Dkt. No. 187-21, Depo. of Hoffman at 119:11-22, 214:14-22. Plaintiff was ordered to undergo a second certification exam, and was provided a script purportedly intended to clarify the reason for the re-examination. Dkt. No. 187-8.

When Plaintiff was placed on "stand down," he requested other alternative work. Dkt. No. 187-12. He asserts that he was advised by Defendant's Employee Relations Adviser (Tayman) that she would get back to him regarding other work he could do, but that he was never contacted again about that. Decl. of Goldstine at ¶¶ 46-51, 56-62.[2] The Service Center Manager was likewise informed that Plaintiff was looking for "any open jobs he could do since he cannot drive." Dkt. No. 187-13.

On April 27, Plaintiff alleges that he was told that he was not to appear at the Everett Service Center while "the investigation" was ongoing. Goldstine Decl. at ¶¶ 55-56.[3] On May 12, 2017, Defendant terminated Plaintiff's medical benefits because he was not working. Dkt. No. 187-14.

On June 15, Plaintiff was medically examined again. Again, the Physician's Assistant performing the examination, despite finding further examination redundant and unnecessary,

---

[2] Tayman reports researching vacant positions for which Plaintiff was qualified and finding none available (and further notes that the dock work Plaintiff expressed interest in requires a work release indicating physical ability to do the work. Tayman alleges that, "[t]o the best of [her] recollection," she told Plaintiff about the lack of any dock worker openings in a phone conversation. Dkt. No. 200, Decl. of Tayman, ¶ 9.

[3] This banning of Plaintiff from the premises does not appear to arise from the investigation of whether or not Plaintiff was disabled and unable to perform his duties, but rather was related to "workplace violence" allegations. Plaintiff asserts that "[t]he investigation regarded a false allegation of Goldstine keeping a firearm in his truck," but a review of the report submitted in evidence (Dkt. No. 67-5, Wong Decl., Ex. E at 5) makes it clear that no credence was given to the firearm allegation; the investigation concerned allegations by Goldstine's supervisor (Mott, who confronted Plaintiff after finding out that Plaintiff's work assignment was not going to be completed) that he felt threatened during the interaction with Goldstine over his refusal/inability to close the door on the trailer. That investigation was completed with no recommendation of disciplinary action.

certified Plaintiff as qualified to drive.  Decl. of Feldheger, ¶¶ 14-15.  Defendant asserted that there were problems with the paperwork (the examining medical professional did not sign the "Federal Form" as required) and would not accept it until it was completed properly.  The company medically requalified him to drive on July 25, 2017 and alleges that Plaintiff was called at least twice to advise him that he could return to work.  Defendant received no response from those calls.  Dkt. No. 61-4, Appesland Depo. at 158:16-20.  An August 3 letter from Tayman also went unanswered (Dkt. No. 61-2, Ex. 4); Plaintiff asserts that he did not receive the letter and that the voicemails did not reveal the reason for the calls.  Dkt. No. 68, Decl. of Goldstine, ¶¶ 64-66.

Plaintiff's assertion that, during the entire three months he was off work he was never offered an alternate work assignment (Id. at ¶ 62) is uncontroverted.  Having been out of work and unpaid for three months, Plaintiff took another job on July 8, 2017.  Id. at ¶ 63.  On August 10, Defendant terminated Plaintiff's employment for "Violation of Leaves of Absence policy for failure to return from leave."  Dkt. No. 67, Decl. of Wong, Ex. I.

**Discussion**

<u>Motions to Strike</u>

Both parties moved to strike portions of the other side's evidence, and the Court will address those requests before addressing the substance of the motion.

*<u>Defendant</u>*

**Declaration of Feldheger**

Feldheger is the Physician's Assistant who examined Plaintiff on April 13 and June 15, 2017 and certified him as qualified to drive (both times).  His declaration recounts the examination (both what Goldstine told him and how he conducted the exam), asserts his belief that Goldstine was forthcoming with him about his then-current physical limitations, and

1    reasserts his finding that Goldstine was medically qualified to drive.  Dkt. No. 188, Decl. of

2    Feldheger.

3        Defendant first moves to strike the declaration on FRCP 37(c)(1) grounds[4], arguing that

4    Feldheger was not disclosed as a witness "until long after discovery closed."  Plaintiff documents

5    his identification of Feldheger in his Initial Disclosures and in response to Defendant's First Set

6    of Interrogatories.  Dkt. No. 206, Exs. CC, DD.

7        Defendant also argues that Plaintiff's statements to Feldheger during the course of the

8    exam are inadmissible hearsay.  The objection is not well-taken: The statements are not being

9    offered for their truth (i.e., whether Plaintiff actually was suffering from a knee impairment at the

10   time) but for the fact that they were disclosed to the examining medical professional (in direct

11   contradiction to Defendant's claim that the report was created in the absence of that

12   information).

13       Defendant further claims that Feldheger's declaration (which reflects the limited range of

14   motion he found in Plaintiff's right knee; id. at ¶ 13) contradicts his later June 15 exam (which

15   notes FROM – Full Range of Motion – in the right knee), thus creating a "genuine issue of

16   material fact" regarding Plaintiff's impairment/disability.  The Court is not convinced – the issue

17   is whether Plaintiff was disabled at the time he was decertified and not brought back to work

18   (April 2017), plus Defendant presents no medical testimony that FROM two months after a

19   previous exam is a medical impossibility or renders an earlier finding of limited ROM invalid.[5]

20

21

22   [4] (**1**) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by
     Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

23   hearing, or at a trial, unless the failure was substantially justified or is harmless.  FRCP 37(c).
     [5] Interestingly, Defendant does *not* move to strike ¶ 14 of Feldheger's declaration which states his medical opinion

24   that Plaintiff qualified under  FMCSA to return to work on April 13.

1   Even if the "contradiction" were found to be substantive, it would go to the weight of the

2   evidence and would still not constitute grounds for striking it.  **DENIED.**

3       **Declaration of Goldstine**

4       Plaintiff attached to his declaration the findings from a medical exam related to an

5   Department of Labor and Industries ("L&I") referral in January 2013.  Dkt. No. 189-1.

6   Defendant objects that the document is inadmissible hearsay from a "non-witness physician" and

7   was not produced to them until April 2020.  Plaintiff withdraws the exhibit in his reply brief.

8       Plaintiff also included a video exhibit of him climbing into the back of a trailer.

9   Defendant objects that the video is not properly authenticated, and is inadmissible hearsay.

10   Plaintiff points out that Defendant stipulated to the introduction of the video at the first trial.

11   Dkt. No. 206, 3rd Decl. of Wong at ¶ 11.   **GRANTED** (as to the L&I report), **DENIED** (as to

12   the video).

13       *Plaintiff*

14       Plaintiff moves to strike portions of four declarations: Safety Assistant Tammy Rogers

15   (Dkt. No. 199), Employment Relations Advisor Christy Tayman (Dkt. No. 200), Everett Service

16   Center Manager Dave Appesland (Dkt. No. 194), and Field Safety Advisor Ted Carlson (Dkt.

17   No. 201-1).  He interposes a variety of objections:

18       **Speculation/lack of personal knowledge**: Plaintiff moves to strike as "speculative"

19   statements of Rogers that Plaintiff failed to disclose current limitations during his April 13 exam.

20   The Court is not persuaded – Rogers is simply reporting her percipient observation that, having

21   reviewed the form for the April 13 exam, she saw no evidence that current limitations were

22   reported.  There is nothing speculative about it.  **DENIED.**

23

24

1    **Hearsay**: Appesland, Carlson, and Rogers all report conversations where a third party

2    related statements allegedly made by Plaintiff.  They are offered for the truth of what was

3    allegedly said and are hearsay.  **GRANTED.**

4    **Improper lay opinion**:  With no citation to any part of the record, Plaintiff objects to the

5    "[i]nterpretation and application of law [which] draws on technical and specialized knowledge

6    and calls for a legal conclusion" outside the expertise of a lay witness.  He also argues that "only

7    a certified *medical examiner* may determine the application of the FMCSA to a medical

8    condition or determine whether further information is required."  Dkt. No. 205, Reply at 3, citing

9    29 C.F.R. §§ 391.41 ad 391.43 (emphasis in original).  Plaintiff moves to strike the "improper

10   lay witness opinions."

11   The regulation Plaintiff cites does say that a certified medical examiner must prepare and

12   verify the medical certification for FMCSA qualification but does not say that <u>only</u> certified

13   medical examiners can determine whether the report satisfies the FMCSA or whether further

14   information is required.  All of Defendant's witnesses are long-time professionals in the trucking

15   industry who preface their declarations with their extensive background and experience.  Their

16   employer, the Defendant motor carrier employing the drivers, is empowered to make compliance

17   determinations, as it must.  Plaintiff has not established to the Court's satisfaction that these

18   witnesses are not qualified to offer the assessments to which he objects.  **DENIED.**

19

20   <u>Motion for Partial Summary Judgment</u>

21   <u>Standard of review</u>

22   "The court shall grant summary judgment if the movant shows that there is no genuine

23   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

24

1   Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving

2   party fails to make a sufficient showing on an essential element of a claim in the case on which

3   the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323

4   (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not

5   lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith

6   Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant

7   probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely,

8   a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

9   factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson

10  v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical

11  Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

12          1.  *Disability discrimination (disparate treatment)*

13      **A.  Washington Law Against Discrimination ("WLAD")**

14  Proof of disparate treatment due to disability under WLAD requires proof that:

15  (1) Plaintiff was disabled;

16  (2) Plaintiff was able to perform the essential functions of his job with or without reasonable

17          accommodation; and

18  (3) Adverse employment action was taken against Plaintiff, and Plaintiff's disability was a

19          substantial factor in that action.

20  Johnson v. Chevron, U.S.A., Inc., 159 Wn.App. 18, 33-34 (2010); *see also* Mackay v. Acorn

21  Custom Cabinetry, Inc., 127 Wn.2d 302, 306 (1995).

22          In his opening brief, Plaintiff makes it clear that his theory of the case (at least for

23  purposes of this motion) is based on Defendant's *perception* of him as disabled, citing the RCW

24

definition of "disabled" which includes "a sensory, mental or physical impairment that… [i]s perceived to exist whether or not it exists in fact." RCW 49.60.040(7)(a).  A plaintiff seeking to establish disparate treatment as a result of a disability is only required to show that "the employer perceived the employee as having an 'impairment.'"  Taylor v. Burlington N.R.R. Holdings, Inc., 193 Wn.2d 611, 622.

The evidence Plaintiff cites in support of his theory of perceived disability includes an email from Rogers to Appesland after the April 13 examination, rejecting the results of that examination because of Plaintiff's alleged failure to list "[m]edical restrictions preventing him from opening and closing trailer door" (Ex. 67-2, Ex. B) and Rogers' 30(b)(6) deposition testimony that "Mr. Goldstine did not document on the physical that he had a medical condition preventing him from doing his job." 30(b)(6) Deposition of Rogers, 122:20-23.

Defendant argues that none of the supervisory staff "perceived" Plaintiff to be disabled, that the company was simply following through on Plaintiff's report that he was "disabled."  The evidence on this issue (while mixed) supports Defendant's position that its initial response was based on Plaintiff's representation regarding his physical limitations rather than on a belief that he was actually disabled.  The following evidence reflects an understanding that Plaintiff had claimed to suffer from a disability without necessarily accepting that representation:

- "If he has a medical condition that is preventing him from performing this required task, I feel it raises a serious Safety issue that needs to be investigated and handled by appropriate avenues available to him." Dkt. No. 187-4, 4/11/17 email from Tayman to Carlson.

- "Issues I see.  States unsafe to climb into MT trailer…. States unable to due to Back and knee issue." Dkt. No. 187-6, 4/11/17 email from Appesland to Tayman.

- "I am concerned about his statement about unsafe to climb a trailer and then about him being unable to due to physical limitations of his body." Dkt. No. 187-7, 4/10/17 email from Appesland to Tayman.

- "Driver states he has a disability and can't open or close trailer doors." Dkt. No. 187-7, 4/11/17 email from Carlson to Rogers.

- "FedEx believes that David Goldstine told multiple employees that he was unable to perform job duties related to closing a trailer door because, quote, 'I am disabled.'… Because Mr. Goldstine will not disclose to FedEx Freight what his disability and/or limitations are, FedEx Freight has no opinion or knowledge as to what these limitations may be…" Dkt. No. 187-8, 5/3/17 email from Tayman to Plaintiff (this is a portion of the "script" Plaintiff was given to provide the medical examiner for his second re-certification exam).

- "Disclose the material information regarding the 'disability' that may impact your ability to safely work as a driver." Dkt. No. 187-15, 5/31/17 email from Tayman to Plaintiff.

Viewing these communications in the light most favorable to the non-movant, all of this language supports Defendant's position that it was acting on Plaintiff's allegation that he was disabled, not that they perceived him that way. Plaintiff might have been better off pursuing a legal theory based on actual disability, which may explain why his reply brief presents evidence supporting the position that he was actually disabled and that Defendant knew it. Defendant objects to this new legal theory appearing in a reply brief (see Dkt. No. 210, Defendant Surreply) and moves to strike it.

The Court agrees, and will disregard Plaintiff's argument and proof relative to any theory based on "actual disability" in ruling on this motion. The Court further finds that summary

judgment on the WLAD disparate treatment claim based on a theory of "perceived disability" is inappropriate because there are genuine issues of material fact regarding whether Defendant perceived Plaintiff as having a disability.

This finding renders it unnecessary to examine the second and third elements of this claim – i.e., whether Plaintiff could perform the "essential functions" of his job with or without a reasonable accommodation and whether Defendant's perception of a disability was a factor in any adverse employment actions taken against Plaintiff.  Based on his failure to establish the first element, he will be denied summary judgment on his WLAD claim of disparate treatment based on a perception of disability.

### B.  Americans with Disabilities Act ("ADA")

The elements of an ADA cause of action for disparate treatment are highly similar to Plaintiff's WLAD claim: Plaintiff must establish that he was (1) disabled as defined in the ADA, (2) a "qualified" individual, and (3) discriminated against because of his disability. Dunlap v. Liberty Nat. Prod., Inc., 878 F.3d 794, 798-99 (9th Cir. 2017).  As with WLAD, a person qualifies as "disabled" if that person is perceived to be so.  *See* 42 U.S.C. § 12102(1); Nunies v. HIE Holdings, Inc., 908 F.3d 428, 434 (9th Cir. 2018).

Again, Plaintiff makes it clear in his opening brief that the adverse action taken against him by his employer was on account of a "perceived disability."  Dkt. No. 186, Motion at 17. And, again, his request for summary judgment fails because there are genuine issues of material fact regarding whether Defendant did in fact perceive Plaintiff as disabled.   The Court denies the motion to award summary judgment on the federal disparate treatment claim as well.

1       *2. Failure to reasonably accommodate*

2       **A. WLAD**

3              The elements of this claim under state law require proof of (1) a medically recognizable

4       impairment; (2) notice to the employer or the employer otherwise knew about the impairment;

5       (3) a substantially limiting effect on Plaintiff's ability to do his job; (4) an ability to perform the

6       essential functions of the job with or without a reasonable accommodation; and (5) failure of the

7       employer to reasonably accommodate the impairment.  RCW 49.60.040(7); <u>Johnson v. Chevron</u>

8       <u>U.S.A., Inc.</u>, 159 Wn.App. 18, 30 (2010).

9              Again, genuine issues of material fact compel denial of summary judgment.  The facts as

10      regard this claim are neither undisputed nor do they point clearly toward a victory for Plaintiff as

11      a matter of law.  As an example, there is uncontroverted testimony that Plaintiff initially refused

12      an offer of the company's reasonable accommodation process[6], alongside testimony from both

13      sides that Plaintiff eventually requested an alternate work accommodation when the company

14      banned him from driving.  Even this undisputed occurrence presents a disputed issue of material

15      fact in that Plaintiff asserts that he never received a response to his request, while Tayman's

16      declaration states that "[t]o the best of my recollection, I conveyed over the phone to Mr.

17      Goldstine that there were no vacant positions for dock work, and he was required to have a work

18      release to perform dock work."  Decl. of Tayman, ¶ 9.).

19

20

21

22

23      ---
        [6] "During my conversation with Mr. Goldstine on April 11, 2017, I explained to him that FXF has a process called the Reasonable Accommodation Review ("RAR"), and that he had the right to request from FXF an accommodation for whatever the disability was that he was claiming.  Mr. Goldstine told me he was not interested in a reasonable accommodation."  Dkt. No. 200, Decl. of Tayman, ¶ 4.

24

1    Plaintiff does not deny having refused the initial offer of access to the company's

2    reasonable accommodation process[7], nor does he offer any legal analysis of the impact of this

3    refusal on the company's obligation to continue offering accommodation.  Regarding Plaintiff's

4    eventual request for other work while he was not driving: There is case law that an offer of an

5    alternate work assignment can function as a "reasonable accommodation," but even assuming

6    that Plaintiff's later request for alternative work "negates" his original refusal of the company's

7    reasonable accommodation process, there is conflicting evidence regarding whether Defendant

8    made efforts to locate other work and communicated those efforts to Plaintiff.  The Court is thus

9    faced with a combination of genuine issues of material fact and no clear-cut legal support for

10   Plaintiff's position.  As a result, summary judgment on Plaintiff's WLAD failure to

11   accommodate claim will be denied.

12   **B.  ADA**

13   Similar problems plague Plaintiff's ADA reasonable accommodation claim.  The

14   elements of the federal cause of action entitle an employee to a reasonable accommodation if  (1)

15   the employee is a "qualified individual;" (2) the employer receives adequate notice; and (3) there

16   is a reasonable accommodation available that would not place an "undue hardship" on the

17   operation of the employer's business.  Snapp v. United Transp. Union, 889 F.3d 1088, 1095 (9th

18   Circ. 2018).

19   There is disagreement between the parties about the nature of "adequate notice:" whether

20   Plaintiff was required to request accommodation before the claim arises or whether an employer

21   is required *sua sponte* to extend the offer of accommodation.  The Court finds that the answer is

22

23   ───────────────

24   [7] In fact, Plaintiff himself testified that he required no accommodation, and did not request one.  Dkt. No. 196-1, Depo. of Goldstine at 52:2-4, 116:20-25, 172:22-24, 203:10-18.

"a little bit of both," but neither avenue leads Plaintiff to summary judgment on this cause of action.

"The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." <u>Barnett v. U.S. Air, Inc.</u>, 228 F.3d 1105, 1112 (9th Cir. 2000). The problems with reaching a finding that Plaintiff requested accommodation have already been discussed *supra* – initially he did not (in fact, refused an offer to explore a reasonable accommodation), and where there is evidence that he eventually did (i.e., his requests for an alternate work assignment), there is disputed evidence about whether Defendant responded and made him aware of its (unsuccessful) attempts.

Plaintiff takes the position that he was not required to request an accommodation, that once Defendant was on "notice" of his disability, the burden shifted to the company to initiate the interactive process and seek out and offer reasonable accommodation. The Court finds that Plaintiff's circumstances do not support such a straightforward analysis, and the law does not appear to favor Plaintiff's position under the facts of his case. Plaintiff relies on a Second Circuit opinion for support of his legal argument that he was not required to request accommodation if his disability was "obvious:"

> [A] situation in which an employer perceives an employee to be disabled but the employee does not so perceive himself presents an even stronger case for mitigating the requirement that the employee seek accommodation. In such situations, the disability is obviously known to the employer, while the employee, because he does not consider himself to be disabled, is in no position to ask for an accommodation… We therefore hold that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious--which is to say, if the employer knew or reasonably should have known that the employee was disabled.

1    Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).

2         But the evidence that Plaintiff's disability was (or should have been) "obvious" to

3    Defendant is far from undisputed.  Indeed, Plaintiff himself was the source of some of the mixed

4    messages – refusing to state outright that he was claiming a disability when questioned, arguing

5    strenuously that he could do his job without accommodation, citing his 2-plus years of

6    performing his job without restriction or incident.  And Defendant has abundant evidence (1) that

7    Plaintiff exhibited no physical characteristics of a physical disability (see Decl. of Appesland, ¶

8    7; Decl. of Mott, ¶ 7; Decl. of Tayman, ¶ 12) and (2) that the company did not accept Plaintiff's

9    representation of "disability," did not perceive him as such, and was simply trying to ascertain

10   through medical examination whether his representations to that effect were justified or not.  A

11   reasonable jury could conclude that it was not (and should not have been) obvious to Defendant

12   that Plaintiff was disabled.

13        Nor is the evidence undisputed that there is a reasonable accommodation available that

14   would not place an undue hardship on the operation of the employer's business.  Snapp, supra at

15   1095.  Defendant attacks the absence of any evidence produced by Plaintiff that there were any

16   vacant alternate positions available for which he was qualified.  Tayman asserts that there were

17   no available dock work jobs for Plaintiff and that, even if there were, they required a medical

18   release indicating Plaintiff was capable of performing the strenuous manual labor required to do

19   the job.  Decl. of Tayman, ¶¶ 8-9, 13-17.  Plaintiff alleges that he received no response to his

20   request for other work; Tayman asserts that "to the best of [her] recollection," she did inform

21   him of the unsuccessful effort.

22        Finally, it is the law in the Ninth Circuit that an employer is not required to create a new

23   position in order to accommodate a disabled employee; it is only required to reassign to existing

24

1 | vacant positions.  <u>Wellington v. Lyon County Sch. Dist.</u>, 187 F.3d 1150, 1156 (9th Cir. 1999).

2 | Defendant asserts that there were no existing vacant positions to offer Plaintiff for which he was

3 | qualified; Plaintiff offers no evidence to the contrary.  The Court will deny summary judgment

4 | on the federal failure to accommodate claim.

5 | ### Conclusion

6 |      Summary judgment is not permissible in the face of genuine issues of material fact.  The

7 | Court finds such issues still remain regarding Plaintiff's claim of both disparate treatment and

8 | failure to reasonably accommodate.  His motion will be denied on that basis.

9

10 |      The clerk is ordered to provide copies of this order to all counsel.

11 | Dated August 17, 2020.

12

13 | Marsha J. Pechman
United States Senior District Judge

14