1

THE HONORABLE MARSHA J. PECHMAN

2

3

4

5

6               UNITED STATES DISTRICT COURT
7           WESTERN DISTRICT OF WASHINGTON
                       AT SEATTLE

8   DAVID GOLDSTINE,

9                           Plaintiff,
                                            Case No. 2:18-cv-01164 MJP
10  v.
                                            **PLAINTIFF DAVID GOLDSTINE'S**
11  FEDEX FREIGHT, INC.,                    **SUPPLEMENTAL TRIAL BRIEF**

12                          Defendant.

13

14                      **I.       INTRODUCTION**

15          In this second trial, Plaintiff David Goldstine brings this action against his former employer

16  FedEx Freight, Inc. ("FXF") for subjecting him to disability discrimination and retaliation in violation

17  of the Americans with Disabilities Act and Washington Law Against Discrimination. The parties have

18  extensively briefed the facts of this case in their respective motions practice and filings. This

19  supplemental trial brief will therefore focus on the relevant legal standards for Plaintiff's claims and

20  FXF's defenses, legal questions for trial, Plaintiff's proposed jury instructions, and other evidentiary

21  issues anticipated during the November 2, 2020 Zoom jury trial.

                        **II.      ISSUES FOR TRIAL**

22          The ADA and WLAD prohibit covered employers from discriminating against individuals

23

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - i
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

because of their disabilities and retaliating because of opposition to discrimination. 42 U.S.C. § 12112(a); RCW 49.60.180, 210; *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138 (2004); *Allison v. Housing Auth. of City of Seattle*, 118 Wn.2d 79, 85-96 (1991). Two distinct claims (or four in light of the ADA/WLAD distinction) are at issue here, as Mr. Goldstine will establish the following: (1) FedEx discriminated against Mr. Goldstine by disqualifying him and keeping him on unpaid involuntary leave because of his actual or perceived disability; and (2) FedEx retaliated against Mr. Goldstine for voicing concerns about disability discrimination.

**A.     FedEx Discriminated Against Mr. Goldstine By Disqualifying Him From Driving and Refusing to Return Him To Work Because of Disability.**

When an employer relies on an employee's disability in deciding to take adverse action, the plaintiff bears the burden of establishing: (1) he was disabled (as that term is defined) under the ADA/WLAD; (2) he was a "qualified individual"; and (3) he was discriminated against because of that disability. *Dunlap v. Liberty Nat. Prod., Inc.,* 878 F.3d 794, 798-99 (9th Cir. 2017); Ninth Circuit Model Civil Jury Instructions, §§ 12.1B & 12.1C (2017 ed.) (last updated October 2019); WPI 330.32. As to causation, the WLAD applies a substantial factor test, *see Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 306 (1995), while the Ninth Circuit has adopted the "but for" causation standard for ADA disparate treatment claims, *see Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019).

**1.     Goldstine is disabled under the ADA**

In this case, FXF contends Mr. Goldstine does not meet *any* of the definitions of disability under the ADAAA or the WLAD, which include actual disability, perceived disability, and record of disability. *See* 42 U.S.C. § 12102(1); RCW 49.60.040. In denying Defendant's Motion for Summary Judgment, the Court held, "because the company insisted on treating Plaintiff as if he was disabled, it is required to comply with the ADA whether Plaintiff thought he was disabled or not." Dkt. # 74,

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 2
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

16:21-22. In its Order on Plaintiff's Motion for Partial Summary Judgment, the Court found "there are genuine issues of material fact regarding whether Defendant did in fact perceive Plaintiff as disabled." Dkt. # 231, 12:19-20. The Court found issues of fact based on "Defendant's position that it was acting on Plaintiff's allegation that he was disabled, not that they perceived him that way," and was "following through on Plaintiff's report that he was 'disabled.'" *Id.* at.10:12-13; 11:15-17. Even under FXF's theory that it relied on Goldstine's "report" without believing it, no issue of fact exists because an employer perceives an individual as disabled when there is uncertainty about the existence of an impairment and it treats the individual as it would one whose medical exam indicates an impairment.

          **a.**      **Goldstine meets the definition of "regarded as" having a disability**

In 2008, Congress enacted the Americans with Disabilities Act Amendments Act (ADAAA). To broaden the coverage of the ADA to include more physical and mental impairments within the scope of the term "disability." Pub. L. No. 110-325 (2008); *see* 42 USC. §12102(4)(A) ("The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act."). The ADAAA's mandate of construing the definition of disability to the maximum extent permitted by the ADA extends to the "regarded as" prong of the definition. *See Equal Employment Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 924 (9th Cir. 2018), *as amended* (Sept. 12, 2018), *cert. denied,* 140 S. Ct. 494 (2019). An individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R.§ 1630.2(l)(1). *See also Hartley v. Boeing Co.*, No. CV 19-373, 2019 WL 4857357, at *3 (E.D. Pa. Sept. 30, 2019) (The "regarded as" definition of disability is thus notably broader than the definition of an actual disability."). A "perceived impairment" therefore includes when "an employer assumes an employee

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 3
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    has an impairment that disqualifies the employee from a job; whether it actually was a permanent or

2    limiting problem is irrelevant." *Id.* (citing *EEOC v BNSF, supra*) (internal quotations omitted).

3        In *EEOC v. BNSF Ry. Co.*, the Ninth Circuit explained that an employer's belief about an

4    impairment is not important. It is the employer's action that establishes discrimination. The court

5    "decline[d] to parse the nature of [the plaintiff's] medical condition," and held the employer "cannot

6    hide behind its argument that there was some uncertainty as to the actual state of [the plaintiff's] back

7    when it assumed that [he] had a back condition that disqualified him." *BNSF Ry. Co.*, 902 F.3d at 924

8    (employer "chose to perceive" an impairment when it ordered additional medical testing and revoked

9    a job offer). In a case "dominated by miscommunications and misinterpretations," an employer

10   "cannot misinterpret information about an employee's limitations to conclude that the employee is

11   incapable of performing a wide range of jobs." *Taylor v. Pathmore Stores, Inc.*, 177 F.3d 180, 190-91

12   (3d Cir. 1999) ("if, for example, because of a blunder in reading medical records, it imputes to him a

13   heart condition he never had—and takes adverse action, it has violated the statute").

14       FXF claims their employees formed no opinion or belief regarding the nature or existence of

15   Goldstine's disability although they treated him as if he had an impairment by medically disqualifying

16   him from driving until he completed a physical examination and then refused to accept his renewed

17   medical certification because it did not address the "medical restrictions" they expected it to contain.

18   FXF cannot rely on uncertainty about his knee condition based on misinterpretations. FXF employee

19   Tammy Rogers did not rely on Goldstine's report to medically disqualify him, but rather

20   misinterpretations of what another employee told her Goldstine had said. In fact, Goldstine asserted

21   multiple times that he could do his job and that his limitations only prevented him from attempting to

22   close a broken trailer door on one night. Misinterpretations and uncertainty are not a defense where

23   FXF took adverse action based on its uncertainty about Goldstine's condition. FXF treated Goldstine

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 4
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    as one who had a disqualifying condition based on its interpretation of his alleged report when it

2    disqualified him. It then rejected his valid April 13th DOT Physical when it allegedly did not match

3    what Rogers thought another employee told her that Goldstine said. It is impossible to reject a DOT

4    Physical for failure to list a disability without assuming the supposedly unlisted disability exists. By

5    taking action based on this assumption, FXF perceived Goldstine as disabled as a matter of law.

6              **b.       Goldstine meets the definition of "history of" having a disability**

7            Goldstine's old knee injury and history of surgeries establishes a record of disability. The Court

8    has not considered whether Goldstine qualifies as disabled under the "record of" prong. *See* Dkt. #

9    231, 9:22-23. "An individual has a record of a disability if the individual has a history of, or has been

10   misclassified as having, a mental or physical impairment that substantially limits one or more major

11   life activities." 29 C.F.R. § 1630.2(k)(1). Courts have interpreted the ADAAA "record of" definition

12   broadly. *See e.g. Mancini v. City of Providence by & through Lombardi*, 909 F.3d 32, 40 (1st Cir.

13   2018) ("Record of disability" may be satisfied by a showing that the plaintiff had a disability in the

14   past even though he no longer suffered from that disability at the time of the alleged discrimination);

15   *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir.1998) ("'Record of' disability includes

16   "people who have recovered from previously disabling conditions . . . but who may remain vulnerable

17   to the fears and stereotypes of their employers.").

18           Here, it is undisputed that Mr. Goldstine experienced a debilitating knee injury in 1993, 14

19   knee surgeries, great difficulty walking until he received a knee prosthesis (which required partial

20   removal of his leg bone) in 2010, that he suffers episodic pain while kneeling and bending to this day.

21   Furthermore, to the extent FXF disputes any current condition, the company misclassified Goldstine

22   as having had a substantially limiting condition and misinterpreted him as stating "he was unable to

23

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   perform job duties related to closing a trailer door." *See* Dkt. # 186, 8:4-7; 29 C.F.R. § 1630.2(k)(1).

2   Goldstine has an established record of disability.

3              **c.     Goldstine meets the definition of "actual" disability**

4              To qualify as having an actual disability under the ADA, one need only establish that a physical

5   impairment substantially limits a major life activity. *See* 42 U.S.C. § 12102(1)(A). ADAAA

6   regulations define a physical impairment broadly. *See* 29 C.F.R. § 1630.2(h)(2). While rejecting the

7   concept of a "per se" disability, regulations provide for a "predictable assessment," i.e. types of

8   impairments that "will, in virtually all cases, result in a determination of coverage" under the ADAAA.

9   29 CFR. § 1630.2(j)(3)(ii).  Disabilities involving a "partially or completely missing limb" do not

10  require vigorous analysis. 29 CFR. § 1630.2(j)(3)(iii).

11             Under the ADAAA, the term "substantially limits" must be interpreted "broadly in favor of

12  expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. §

13  1630.2(j)(1)(i). "'Substantially limits' is not meant to be a demanding standard." *Id.* Accordingly:

14             The primary object of attention in cases brought under the ADA should be whether
               covered entities have complied with their obligations and whether discrimination has
15             occurred, not whether an individual's impairment substantially limits a major life
               activity. Accordingly, the threshold issue of whether an impairment "substantially
16             limits" a major life activity should not demand extensive analysis."

17   29 C.F.R. § 1630.2(j)(1)(iii). "An impairment is a disability . . . if it substantially limits the ability of

18  an individual to perform a major life activity as compared to most people in the general population.

19  An impairment need not prevent, or significantly or severely restrict, the individual from performing

20  a major life activity in order to be considered substantially limiting.'" *Weaving v. City of Hillsboro*,

21  763 F.3d 1106, 1111 (9th Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "An impairment that is

22  episodic or in remission is a disability if it would substantially limit a major life activity when active."

23  42 U.S.C. § 12103(4)(D); *see also* 29 C.F.R. § 1630.2(j)(1)(vii). "[T]he difficulty, effort, or time

1   required to perform a major life activity," and "pain experienced when performing a major life

2   activity" are relevant considerations. 29 C.FR. § 1630.2(j)(4)(i), 4(ii). The ADAAA requires that the

3   determination of whether an impairment substantially limits a major life activity be made without

4   regard to the effect of mitigating measures such as "prosthetics" including Mr. Goldstine's knee

5   prosthetic. *See* 42 U.S.C. §12102(4)(E)(i)(I); 29 C.F.R. § 1630.2(j)(5).

6         Here, Goldstine's knee impairment is an actual disability. Goldstine fell at work in 1993 tearing

7   multiple tendons in his knee. He had a series of 14 knee surgeries culminating in a total knee

8   replacement in 2010. A total knee replacement ("TKR") involves the surgical removal of bone and

9   placement of a prosthesis. Without the knee prosthesis Goldstine was substantially limited in his ability

10   to walk. However, even after the TKR, he still sometimes experiences a limited range of motion and

11   pain when kneeling. Goldstine meets the "actual disability" definition.

12         **d.**    **The ADA Definitions of disability apply under the broader WLAD definitions**

13

14         The WLAD definition of "disability" is broader than under the ADA and provides additional

    protections to Washington employees. *See Hale v. Wellpinit School Dist. No. 49*, 165 Wn.2d 494, 501–

15   02 (2009); *see also Taylor v. Burlington N. R.R. Holdings, Inc.,* 193 Wn.2d 611, 632 (2019) ("The

16   WLAD is broader than the ADA and offers its own independent protections to Washingtonians."). As

17   the Washington Supreme Court has explained, "the legislature intended to adopt a broad and expansive

18   definition of "disability" in order to protect against discrimination. . . [T]he legislature has expressly

19   rejected the idea that the ADA should be used to constrain the protections offered under the WLAD."

20   *Taylor*, 193 Wn.2d at 621–22. As such, an individual who establishes actual disability or record of

21   disability under the ADA also establishes it under the WLAD. Specific to the "regarded as" prong,

22   "[b]ecause the WLAD, generally speaking, is at least as broad as the ADA," the Ninth Circuit has

23

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 7
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1  applied the holding of *EEOC v. BNSF*, to the WLAD. *See Taylor v. Burlington N. R.R. Holdings Inc.*,

2  801 F. App'x 477, 479 (9th Cir. 2020) (citing 902 F.3d 916, 923–24 (9th Cir. 2018)) (additional

3  citations omitted).  Expansion of the "perceived as" definition to the WLAD is consistent with the case

4  law because the WLAD grants greater protections than the ADAAA.  Accordingly, Goldstine meets

5  the three definitions of disability under the WLAD.

6        **2.**     **Goldstine Could Perform the Essential Functions of the Road Driver Position. Therefore, He was a "Qualified Individual."**

7

8  Goldstine was qualified to perform his job duties as a Road Driver. FXF claims alleged

9  statements made by Goldstine that he had limitations climbing into the back of a truck trailer required

10  the company to disqualify him from driving under FMCSA regulations. Goldstine contends his

11  physical impairment does not prevent him from completing the essential functions of his job and that

12  he did not attempt to close the broken trailer door because it was unsafe.

13  A person is a "qualified individual with a disability" if he "satisfies the requisite skills,

14  experience, education and other job-related requirements of the employment position such individual

15  holds or desires and, with or without reasonable accommodation, can perform the essential functions

16  of such position."  29 C.F.R. § 1630.2(m); 42 U.S.C. 12111(8); *see Dunlap*, 878 F.3d at 798-99; *Kries*

17  *v. WA-SPOK Primary Care*, *LLC*, 190 Wn. App. 98, 123-126 (2015).

18  FXF now concedes that FMCSA standards do not require closing an un-closeable broken trailer

19  door. Since this is the task Goldstine refused to attempt, FXF's assertion that Goldstine could not

20  perform his job duties is baseless and its medical disqualification was based on an impermissible

21  assumption about his disability. There is no evidence in this case that climbing from the ground into

22  the back of a semi-trailer is an essential function of the job. It was not a frequently required job duty

23  and was not required in any physical qualification standard enumerated in 49 C.F.R. § 391.41. FXF's

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 8
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   employees are not DOT Certified Medical Examiners who can determine what medical qualifications

2   are required. FXF does not assert that it took action based on Goldstine had any limitations regarding

3   pre-trip safety inspections, and Goldstine never failed to perform these inspections. FXF cannot now

4   argue that Goldstine was unable to perform safety inspections, which he was able to and did perform.

5          Every medical provider in this case will testify that Goldstine was qualified under FMCSA

6   standards. Even FXF eventually agreed Goldstine was qualified after further review of old medical

7   records, which was not a necessary requirement. Still, FXF treated Goldstine as disabled when the

8   company disqualified him from driving pending a medical examination because it was unsure of his

9   limitations. The evidence will show that Goldstine was able to open and close functioning trailer doors

10  and perform all requires safety inspections throughout his time at FXF.  The evidence will also show

11  that each medical certification Mr. Goldstine received in 2017 was valid.

12         **3.      FedEx Took Adverse Actions Mr. Goldstine Because of His Disability.**

13         Rather than acknowledge that closing the broken trailer door was impossible and not a required

14  job duty and permitting Goldstine's valid DOT Physical to stand, FXF medically disqualified Goldstine

15  based on misinterpretations of what one management employee told Tammy Rogers. When Goldstine

16  was validly re-certified on April 13th, FXF refused to accept this medical certification despite assurance

17  from U.S. Healthworks of its validity. The company's argument that it rejected Goldstine's medical

18  certifications because he allegedly failed to disclose required health history information is

19  discriminatory speculation without medical evidence. FXF's failure to offer Goldstine alternative work,

20  in addition to banning him from the premises is an adverse action because it prevented Goldstine from

21  earning any wages and cut off his benefits. In denying FXF's Motion for Summary Judgment on

22  Goldstine's disability discrimination claim, the Court acknowledged that failing to offer him other work

23  was among the "classic adverse employment actions" taken by the company. Dkt. # 74, 12:20-13:1.

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 9
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    Because the refusal to offer alternative work deprived Goldstine of an income and benefits indefinitely,

2    it is an adverse action, even though he is not pursuing his failure to accommodate claims.

3         FXF asserts that under FMCSA regulations, it can rely on hearsay, ignore medical opinions,

4    and owes no duty of good faith to determine the accuracy of its assumptions. In pursuing a "regarded

5    as" disability claim, "under the ADA, it is the employer's burden to educate itself about the varying

6    nature of impairments and to make individualized determinations about affected employees." *Taylor v.*

7    *Pathmore Stores, Inc.*, 177 F.3d 180, 192 (3d Cir. 1999). In *Taylor v. Pathmore Stores*, Inc., the court

8    "emphasize[d] that it is not reasonable for an employer to extrapolate from information provided by an

9    employee based on stereotypes or fears about the disabled." *Id.* at 193. If the Company did not make

10   an assumption about Goldstine's disability, it would not have disqualified him and refused to accept

11   his valid April 13th DOT Physical. FXF cannot hide behind its argument that there was some uncertainty

12   as to the actual state of Goldstine's knee when it assumed he was not qualified to drive. *See EEOC v.*

13   *BNSF Ry. Co.*, 902 F.3d at 924. FXF unreasonably extrapolated from its employee's misrepresentation

14   of what it believed Goldstine stated, and took adverse action.

15        Because there is no dispute that FXF cut off Goldstine's wages and benefits because of its

16   perception of his physical impairment, Plaintiff will ask the Court to enter a directed verdict in his

17   favor on this disparate treatment claim.

18        **4.      The FMCSA Does Not Provide a Defense**

19        FXF asserts FMCSA compliance is a defense where it relied only on what one FXF employee

20   told another FXF employee about what Goldstine stated. FXF must bear the burden of proof for such

21   a defense. Only a Certified Medical Examiner can determine when a driver is medically qualified to

22   drive a commercial vehicle. *See* 49 C.F.R. § 391.43(a). FXF claims the FMCSA required the company

23   to reject Goldstine's renewed medical certification as "incomplete" because it allegedly did not

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 10
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    identify any "current" medical restrictions "preventing him from opening and closing trailer door

2    (sic)." Goldstine contends FXF should not have rejected the medical certification because he did not

3    have medical restrictions preventing him from opening and closing trailer doors generally and that

4    FXF misclassified him as disabled from working when he was not.

5        FXF asserts that Goldstine failed to list "current" limitations that prevented him from closing

6    a trailer door while also asserting that it did not believe any such limitations existed. *See* Dkt. # 199,

7    ¶ 16; Dkt. # 193, 11:15-18. This contradiction demonstrates the discriminatory assumptions the

8    company made about Goldstine and it is a medical opinion. Furthermore, FXF has not identified any

9    FMCSA requirement that a driver list a "current limitation," or the ability to close a trailer door. *See*

10   Dkt. 199-2. The driver is required to list his "health history," and testimony at trial will establish that

11   Goldstine was very upfront about his knee and back problems, listed them on his April 13th DOT

12   Physical, and was certified after very through range of motion testing.[1] *See* Dkt. # 252-5. There was

13   no new injury. Goldstine complied with 49 U.S.C. § 521, 49 C.F.R. §390.35, and all other requirements

14   to be validly certified, but FXF rejected this valid certification based on its assumptions about

15   Goldstine's knee condition, misreading of FMCSA requirements, and an alleged failure to list current

16   conditions *that the company claims it did not believe existed*.

17       Goldstine did not violate 49 U.S.C. § 521(b)(2)(B)(ii) and 49 C.F.R. §390.35, and FXF was not

18   required to reject his valid DOT Physical. These laws prohibit falsification and fraud. FXF's persistent

19   smearing of Goldstine as dishonest is not well taken. Section 521 imposes a civil penalty on one:

20       who ***knowingly*** falsifies, destroys, mutilates, or changes a required report or record,
         ***knowingly*** files a false report with the Secretary [of Transportation], ***knowingly*** makes
21       or causes or permits to be made a false or incomplete entry in that record about an
         operation or business fact or transaction, or ***knowingly*** makes, prepares, or preserves a
22       record in violation of a regulation or order of the Secretary . . .

23

---

[1] And Goldstine's surgical history, including for his knee, is documented in his in his February 2, 2017 DOT Physical.

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 11
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

49 U.S.C. § 521(b)(2)(B)(ii) (emphasis added). Regulation 49 C.F.R. §390.35 prohibits a "fraudulent or intentionally false statement on any application, certificate, report, or record."

Goldstine disclosed his health history and was properly certified – which FXF knew after its call with the Regional Medical Director of the clinic that certified him – but the company refused to accept the valid certification. FXF cannot assert it was preventing knowingly false or fraudulent records, when Goldstine did no such thing. Furthermore, the company disclaims knowing anything about Goldstine's disability and cannot assert it acted on any actual knowledge. FXF attempts to disguise its own medical opinions as "compliance" and avoid its failure to engage in the administrative resolution procedure set forth in 49 C.F.R. § 391.47 to challenge medical qualifications. The company cannot assert it acted on an alleged failure to list a medical condition without determining one existed. The FMCSA does not provide a defense for FXF's discriminatory actions.

**B.      FedEx Freight Retaliated Against Mr. Goldstine**

> **1.      FedEx Retaliated Against Mr. Goldstine Under the ADA Entitling Him to Further Equitable Relief.**

Goldstine asserts retaliation claims under the WLAD and ADA. ADA retaliation claims are redressable only by equitable relief.  *See Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1270 (9th Cir. 2009). The Court may try Mr. Goldstine's ADA retaliation claim with an advisory jury. Fed. R. Civ. P. 39(c). The available remedies:

> [M]ay include, but [are] not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. . .

*Id.* at 1264 (quoting 42 U.S.C. § 2000e–5(g)(1) (listing further limits on backpay remedies)). Goldstine will ask the advisory jury to recommend finding liability on his ADA retaliation claim. Goldstine will

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 12
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    ask this Court to order his reinstatement or front pay if the jury does not award adequate front pay

2    compensation for his other legal claims. Goldstine. Goldstine is requesting actual damages for

3    retaliation under the WLAD, and the separate remedy of equitable relief under his distinct ADA

4    retaliation claim. The Court may exercise discretion to allow front pay as "an award of future lost

5    earnings to make a victim of discrimination whole." *Cassino v. Reichhold Chems., Inc.,* 817 F.2d 1338,

6    1346-47 (9th Cir.1987).

7    **2.    FXF May Be Held Liability Subordinate Bias Theory**

8    To prove a retaliation claim, a plaintiff does not need to show that the individual who took the

9    adverse action harbored bias if a subordinate with illicit motive set the events in motion.  "[I]f a

10   supervisor performs an act motivated by . . . animus that is *intended* by the supervisor to cause an

11   adverse employment action, and if that act is a proximate cause of the ultimate employment action,

12   then the employer is liable." *Boyd v. State, Dep't of Soc. & Health Servs.*, 187 Wn. App. 1, 20 (2015)

13   (quoting *Staub v. Proctor Hospital*, 562, U.S. 411, 422 (2011)); *see also City of Vancouver v. State*

14   *Pub. Employment Relations Comm'n*, 180 Wn. App. 333, 351 (2014) ("Subordinate bias liability

15   recognizes that it does not matter whether the subordinate personally 'pull [s] the trigger' on the

16   adverse employment decision; the subordinate's animus sets in motion the events that culminate in the

17   adverse employment action") (quoting *Stacks v. Sw. Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1323 (8th

18   Cir. 1994)).

19   At trial, there will be testimony that Goldstine objected to what he reasonably believed was

20   disability discrimination in discussions with Manager Appesland, and HR Advisor Tayman, by

21   requesting participation of an attorney in meetings with them, and filing a charge of discrimination

22   with the Washington Human Rights Commission. In turn, these individuals set in motion his

23   disqualification from driving, the ending of his wages and benefits, the denial of alternate work, and

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    banning him from the property. They also failed to share information in their possession that would

2    have led to his return to work. Under a cat's paw theory, the retaliatory animus held by management

3    establishes liability for FXF even if those managers caused harm indirectly through other employees

4    in the Safety and Payroll Departments.

5                                    **III.    DAMAGES**

6          At trial, Goldstine will present evidence of economic losses and emotional distress proximately

7    caused by FXF's conduct. Goldstine will seek compensatory damages, including damages for lost

8    wages, lost benefits, front pay, and emotional distress.

9          Dr. Christina Tapia, an expert witness, will present calculations to help the jury determine

10   Goldstine's economic damages at trial, including back pay and front pay. Mr. Goldstine will testify

11   that when he started at FXF in 2015, he intended to work at FedEx until he is 72 years old. Dr. Tapia

12   will provide calculations of Mr. Goldstine's lost wages for every year up until the age he expects to

13   retire as a tool for the jury as it determines his damages. Dr. Tapia will not offer any opinion as to how

14   long Mr. Goldstine will work. That is for the jury to decide.

15         Mr. William Partin will testify as an expert witness for FXF. The Court has ruled that "Mr.

16   Partin may testify as to his calculations concerning Plaintiff's economic loss, but will not be permitted

17   to rely on his assumptions regarding 'fully mitigating earnings.'" Dkt. 241, 4:14-15. Mr. Partin is also

18   precluded from offering the vocational opinions set out in his Expert Report. *See id.* at 3:16-18. The

19   Court has excluded FXF's vocational expert, William Skilling, from testifying, due to "conflation of

20   'local' jobs available in Plaintiff's geographic area with the 'local' truck driving that is Plaintiff's job

21   requirement," and combining "local driving jobs and long-haul driving jobs." *Id.* at 5:1-4.

22         In addition, Goldstine seeks punitive damages under the ADA, *see Passantino v. Johnson &*

23   *Johnson Consumer Products, Inc.*, 212 F.3d 493, 514-15 (9th Cir. 2000), an additional amount for his

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 14
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    tax liability, *Blaney v. International Association of Machinists & Aerospace Workers District No. 160*,

2    151 Wn.2d 203 (2004), and attorney's fees and costs.

3                        **IV.    AFFIRMATIVE AND OTHER DEFENSES**

4    **A.      FXF Cannot Establish Any Affirmative Defenses to Mr. Goldstine's Claims.**

5            FXF may not raise any new affirmative defense on which it bears the burden of proof, including

6    business necessity of complying with FMCSA regulations. Requiring an employee to meet FMCSA

7    medical standards may constitute a defense to an ADA claim when it is job related and consistent with

8    business necessity.[2] *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 568-570 (1999) (considering

9    FMCSA visual acuity standard as set forth in 49 C.F.R. 391.41(b)(10)). Under the ADA, "business

10   necessity" is an affirmative defense that must be asserted and proved by the employer. *See Bates v.*

11   *United Parcel Serv., Inc.*, 511 F.3d 974, 994 (9th Cir. 2007). FXF did not plead business necessity as

12   a defense in its Amended Answer. *See* Dkt. # 20, pp. 10-11. The Court ordered that FXF's catch-all

13   "in case we think of anything else" provision be stricken. Dkt. # 74, 10:1-4; 13:1-3 (Oct. 29, 2018

14   Order on Motions for Summary Judgment).

15           Nonetheless, FXF argued in its opposition to Plaintiff's subsequent Motion for Partial

16   Summary Judgment that the "ADA recognizes that an employer may require a medical examination

17   of an employee that is job-related and consistent with business necessity." Dkt. # 193, 14:26-27.

18   Plaintiff argued this could not be raised. *See* Dkt. # 205, 9:12-10:1. The Court did not reach this

19   question. *See* Dkt. # 231, 12:4-10. Because business necessity is an affirmative defense that was

20   dismissed with FXF's catch-all provision, the company may not raise this defense at trial.

21           At trial, FXF may only argue theories that are relevant to the claims and defenses in this case.

22

23   _____

[2] Under the WLAD, the defense that a driver is not qualified under 49 C.F.R. § 391.41 is bona fide occupational qualification
affirmative defense. *See Tinjum v. Atlantic Richfield Co.*, 109 Wn. App. 203, 205-06 (2001).

**PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 15**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

*See* Fed. R. Evid. 401. Disproving the proposition that FXF was complying with FMCSA regulations when it refused to allow Goldstine to work is not an element of his ADA and WLAD claims. *See* Ninth Circuit Model Civil Jury Instructions, §§ 12.1A, 12.1B & 12.1C (2017 ed.) (last updated October 2019); WPI 330.32, 330.05. *See also* Dkt. # 74, 11:7-8 ("FXF's primary defense is that its obligation to comply with the FMCSA overrides the application of the ADA and renders the company immune to claims of disability discrimination."). Because FMCSA compliance is not relevant or required for Goldstine to prove his claims, evidence on this issue can only be offered if relevant to an affirmative defense raised by FXF.[3] FXF may not offer evidence and argument about FMCSA regulations outside the context of meeting an element of an affirmative defense on which it has the burden.

Should the Court permit FXF to argue that the company was attempting to comply with federal regulations, FXF must demonstrate its relevance to an affirmative defense and propose jury instructions outlining its burden of proof.

**B.    Mr. Goldstine Did Not Fail to Mitigate His Damages.**

FedEx asserts that Mr. Goldstine did not mitigate his damages.  This is simply not accurate. After the mistrial was declared, FedEx began to assert that Goldstine did not adequately mitigate his damages because his jobs after FXF paid less.  Earning a fully mitigating income is not a requirement. Successful mitigation is not required, nor is the failure to earn a substantial income dispositive of whether the employee exercised reasonable diligence. *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 530 (1992).  *See also Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 301 (1995) ("In *Burnside*, the employee did not fail to mitigate his damages, even though he did not make an ongoing concerted effort to find employment comparable to that from which he had been terminated.").

---

[3] As discussed *supra*, FXF has adduced no evidence that Goldstine was not medically qualified to work as a commercial truck driver and therefore may not argue FMCSA regulations show he was not a "qualified individual."

1    FedEx has the burden to prove both (1) that the plaintiff was not reasonably diligent in seeking

2    other employment, and (2) that, with the exercise of reasonable diligence, the plaintiff had a reasonable

3    chance of finding comparable employment. *EEOC v Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir.

4    1994). The employer must prove that "during the time in question there were substantially equivalent

5    jobs available," and that plaintiff "failed to use reasonable diligence in seeking one." *Id*. As discussed

6    *supra*, FXF's experts may not offer vocational opinions. Save for his recovery from kidney surgery to

7    remove cancer, Goldstine has worked continuously since leaving FXF, and has mitigated his damages.

8                                         **V.      JURY INSTRUCTIONS**

9        Goldstine has proposed the following jury instructions in addition to or modifying the Court's

10   Preliminary Instructions to the Jury (Dkt. # 131).

11   **A.      Corporation Acts Through Its Employees**

12       Goldstine requests that corporate knowledge be addressed in the jury instructions. FXF argued

13   in opposing Plaintiff's Motion for Partial Summary Judgment that "Plaintiff presents no evidence that

14   Ms. Rogers was even aware of the after-the fact hearsay evidence of a May 2, 2017 conversation

15   between Dr. Hoffman and Craig Flick," and therefore the company is not responsible for any harm to

16   Goldstine. Goldstine contends he shared detailed information with FXF managers and HR personnel

17   about his knee injury, including details regarding his impairment, that should have been relayed to

18   Safety Department employees.

19       When notice is given to an agent who has or appears to have authority to receive it, the notice

20   is "chargeable to the principal. *See Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 876 (9th Cir. 1989);

21   *Plywood Mktg. Associates v. Astoria Plywood Corp.*, 16 Wn. App. 566, 575 (1976) ("Generally

22   a corporate principal is chargeable with notice of facts known to its agent, except when the agent has

23   not acted for or on behalf of the corporation, or has acted adversely to the principal in his own

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 17
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1    interest"); *See also BP W. Coast Products, LLC v. Shalabi*, C11-1341MJP, 2012 WL 2277843, at *4

2    (W.D. Wash. June 14, 2012) (Pechman, J.) ("a corporate principal is chargeable with notice of facts

3    known to its agent . . . ") (quoting *Plywood Mktg. Assocs.*, 16 Wn. App. at 575).

4         Defendant's claim that its failure to convey information from employee to employee absolves

5    it of liability is contrary to law, and the jury should be so instructed.

6    **B.    Definition of Disability – Disparate Treatment (ADA and WLAD)**

7         The ADA and WLAD provide for broad construction in defining disability, including actual

8    disability, perceived disability, and record of disability. *See* discussion in Section III(A), *supra*.

9    Because of the facts here where FXF asserts that Goldstine does not meet any definition of disability

10   even though it medically disqualified him and rejected his valid DOT Physical, the jury should be

11   instructed in further detail on the definition of disability.

12   **C.    Retaliation – Subordinate Bias Liability**

13        FXF claims its Safety Department made the decision to disqualify Goldstine and had no

14   personal retaliatory animus against him. Goldstine contends the Safety Department relied upon

15   misinformation provided by the Everett Service Center manager and HR personnel who did have a

16   retaliatory motive and set in motion the events leading to his medical disqualification. The Safety

17   Department that disqualified Goldstine and refused to accept his valid April 13th DOT Physical, was

18   physically distant from the events that occurred in Washington. Because Manager Appesland and HR

19   Advisor Tayman set in motion the events that led to Rogers' adverse actions and Goldstine alleges

20   they did so with discriminatory animus, a "cat's paw" instruction is proper.

21   **D.    Pretext**

22        While a jury instruction on pretext is not required, a pretext instruction on permissible

23   inferences that accurately states the law "might be appropriate"; it is not an abuse of discretion to

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 18
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

refuse to give the instruction. *Farah v. Hertz Transporting, Inc.*, 196 Wn. App. 171, 181 (2016), *review denied* 187 Wn.2d 1023 (2017); *see also Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002) (holding that to avoid the danger that a jury might assume more evidence is required, where the plaintiff presented evidence that the defendant's proffered explanation was pretextual, "a trial court must instruct jurors that if they disbelieve an employer's proffered explanation they may—but need not—infer that the employer's true motive was discriminatory").

FXF claims it did not allow Goldstine to drive because he stated he had limitations climbing into the back of a truck trailer and provided incomplete medical history to the medical examiner when he initially sought recertification. Yet the contemporaneous evidence shows Goldstine repeatedly asserting the opposite. He wrote to the Safety Officer: "I never said I can't get in and out of a truck. I've been doing that since my return to work 22 years ago." He asserted "safety concerns about having to force close the jammed trailer door, by having to climb up in there, in the dark and in the rain as well as me having limited mobility due to having a disability due to a knee injury sustained in 1993 at another job." In addition, the medical examiner will testify that Goldstine disclosed his knee condition, his history of surgeries, the broken trailer door, and that he "hesitated to climb up into the trailer because of his knee limitations." Decl. Feldheger ¶ 9 (Dkt. # 188). As a result, the examiner "closely examined Goldstine's back and knees" before recertifying him in accordance with the physical requirements of the FMCSA guidelines. In addition, FXF inquired with the clinic about the adequacy of the recertification exam and learned the exam was valid yet still refused to accept it. Because the stated reason for FXF's conduct is unworthy of belief, there is a danger that jurors assume more evidence is required when they should be informed that the jury is entitled to infer discrimination or retaliation from the falsity of the stated justifications for the company's actions.

This case contains significant evidence of pretext. Adding a pretext instruction is an

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   appropriate exercise of Court's discretion, which will not be overturned on appeal and will

2   significantly aid the jurors in understanding their role to evaluate credibility and infer discrimination

3   and retaliation in the absence of a plausible explanation for the employer's bizarre conduct.

4   **E.      Proximate Cause**

5          Under the WLAD, an employee is not required to prove he was discharged or constructively

6   discharged in order to seek damages for front and back pay. *Martini v. Boeing Co.*, 137 Wn.2d 357,

7   363–64, 367–69, 370–72 (1999). The test is that "damages must be proximately caused by the

8   wrongful action, resulting directly from the violation of RCW 49.60." *Id.* at 371. In the negligence

9   context, the "but for" test is used for proximate cause. *See Hartley v. State*, 103 Wn.2d 768, 777

10  (1985). The WLAD "requires liberal construction in order to accomplish the purposes of the law."

11  *Marquis v. City of Spokane*, 130 Wn.2d 97, 108 (1996). The Washington Supreme Court has approved

12  application of the substantial factor test to a claim for damages in a toxic tort case. *Hue v. Farmboy*

13  *Spray Co., Inc.*, 127 Wn.2d 67, 87–88 (1995). Its use in this case is consistent with the liberal

14  construction mandate of the WLAD.

15                          **VI.      CONCLUSION**

16         FedEx Freight's decision to disqualify Mr. Goldstine from driving based on his disability and

17  refusal to return him to work after he received a new valid medical certification, and after he voiced

18  concerns about discrimination, will establish in the minds of the jurors that, more likely than not, FXF

19  acted based on illegal prejudice and stereotypes about people with disabilities. Mr. Goldstine values

20  the opportunity to appear before the Court electronically via Zoom, to have the evidence fairly

21  evaluated and appropriately admitted, and to have a just outcome reached by the jury.

22

23  **DATED** October 21, 2020.

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 20
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1   **AKW LAW, P.C.**                              **BLOOM LAW PLLC**

2

   */s/ Ada K. Wong*                               */s/ Beth Bloom*
3   */s/ Jordan T. Wada*                            Beth Bloom, WSBA #31702
   Ada K. Wong, WSBA #45936                        Attorneys for Plaintiff David Goldstine
4   Jordan T. Wada, WSBA #54937                     3827C South Edmunds Street
   Attorneys for Plaintiff David Goldstine          Seattle, Washington 98118
5   6100 219th St. SW, Suite 480                    Tel.: (206) 323-0409
   Mountlake Terrace, WA 98043                      E-mail:  bbloom@bloomlawpllc.com
6   Tel.: (206) 259-1259
   Fax: (855) 925-9529
7   E-mail: ada@akw-law.com
   E-mail: jordan@akw-law.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 21
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on October 21, 2020, I caused to be electronically filed the

3  foregoing document with the Clerk of the Court using the CM/ECF system, which will send

4  notification of such filing to the following:

5
> Medora Marisseau
> Brett A. Elliot
6  Karr Tuttle Campbell
> 701 Fifth Avenue, Ste. 3300
7  Seattle, WA 98104
> E-mail: MMarisseau@karrtuttle.com
8  E-mail: belliott@karrtuttle.com
> E-mail: jlikit@karrtuttle.com
9
> Donald H. Snook, TN Bar #21775
10 Sandra C. Isom, CA Bar #157374
> FedEx Freight, Inc.
11 1715 Aaron Brenner Drive, Suite 600
> Memphis, TN 38120
12 E-mail: Donald.snook@fedex.com
> E-mail: Scisom@fedex.com
13 *Counsel for Defendant FedEx Freight, Inc.*

> Beth Bloom, WSBA #31702
14 Attorney for Plaintiff
> 3827C South Edmunds Street
15 Seattle, WA 98118
> Tel.: (206) 323-0409
16 E-mail:  bbloom@bloomlawpllc.com
> *Co-counsel for Plaintiff David Goldstine*

17

18
19     I declare under penalty of perjury under the laws of the state of Washington that the

20 foregoing is true and correct.

21 Dated October 21, 2020, at Mountlake Terrace, Washington.

22
> */s/ Kaila A. Eckert*
> Kaila A. Eckert, Paralegal

23

**PLAINTIFF DAVID GOLDSTINE'S SUPPLEMENTAL TRIAL BRIEF - 22**
Case No. 2:18-cv-01164-MJP

**AKW LAW, P.C.**
6100 219th St. SW, Suite 480
Mountlake Terrace, WA 98043
Tel. (206) 259-1259 / Fax (855) 925-9529