1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID GOLDSTINE, | CASE NO. C18-1164 MJP |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| v. | |
| FEDEX FREIGHT INC, | |
| Defendant. | |

This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees and Costs. (Dkt. No. 332.) Having reviewed the Motion, Defendant's Opposition (Dkt. No. 342), the Reply (Dkt. No. 353), and all relevant portions of the record, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

After the jury found in Plaintiff David Goldstine's favor on his disability claims and awarded $6,851,743—now reduced by statute to $2,151,743—Goldstine now seeks an award of attorneys' fees and costs. Goldstine requests $1,380,807.00 in fees for 3,715.4 hours spent

1    litigating the case against Defendant FedEx Freight Inc. He asks for application of a 1.25

2    multiplier to increase the fee award to $1,726,008.75. Goldstine also asks for reimbursement of

3    $117,022.03 in out-of-pocket litigation expense that are not taxable. Goldstine also asks for an

4    award of fees for bringing this Motion and for the time spent opposing FedEx's Motion for

5    Judgment as a Matter of Law and Motion to Amend the Judgment. The Court has already found

6    fees appropriately awarded for the opposition briefing, but has yet to set the precise figure.

7    FedEx opposes the requested fees and costs and proposes a number of reductions.

8          The Court notes that the number of hours expended in this case reflects the

9    contentiousness between the Parties and their counsel on what was otherwise a relatively

10   straightforward matter. After missteps by both Parties, the Court declared a mistrial and then

11   imposed discovery sanctions against counsel for FedEx who then absented himself from this

12   matter. As the docket reflects, the Parties litigated nearly every possible issue that arose, often on

13   issues they could have resolved had they simply met and conferred. So while the filings were

14   voluminous they more aptly reveal the deep divide between the parties rather than the

15   complexity of the issues. It is against this background that the Court reviews and assesses the

16   request for fees and costs.

17                                          **ANALYSIS**

18   **A.      Prevailing Party**

19         "The ADA, specifically 42 U.S.C. § 12205, permits the 'prevailing party' to seek

20   attorneys' fees and costs." Barrios v. California Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th

21   Cir. 2002). "The Supreme Court has held that a prevailing plaintiff under a statute so worded

22   'should ordinarily recover an attorney's fee unless special circumstances would render such an

23   award unjust.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (citation and

24

1  internal quotation marks omitted)). Attorneys' fees and costs are also permitted to be awarded to

2  the prevailing party asserting a WLAD violation. See RCW 49.60.030(2).

3        The Parties do not seriously contest whether Goldstine is the prevailing party. The jury

4  found in his favor on all four claims, though its decision was purely advisory on the ADA

5  retaliation claim. The Court has since found this claim moot largely because Goldstine did not

6  identify any equitable relief to which he is entitled. Even with this decision and the jury's

7  mitigation award, the Court finds that Goldstine is the prevailing party and entitled to reasonable

8  attorneys' fees and costs. See 42 U.S.C. § 12205; RCW 49.60.030(2).

9  **B.  Lodestar Calculation**

10        Having determined Goldstine the prevailing party, the Court must determine the

11  reasonable fees to which Goldstine is entitled. "The essential goal in shifting fees . . .  is to do

12  rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). To set

13  the fee award, the Court begins by calculating a lodestar "by taking the number of hours

14  reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Fischer v.

15  SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley, 461 U.S. at 433); see Ewing

16  v. Glogowski, 198 Wn. App. 515, 521 (2017) (accord under Washington law).

17        Under federal law, the Court determines the hourly rate by considering the "evidence

18  produced by the parties, including fee rates of other attorneys in similar practices, awards in

19  comparable cases, counsel's experience and reputation level, and the market rates, as well as two

20  additional Kerr factors: the novelty/difficulty of the issues and the preclusion of other work."

21  Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). And under Washington law, if the "attorneys in

22  question have an established rate for billing clients, that rate will likely be a reasonable rate." Bowers

23  v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983). But "[t]he attorney's usual fee is not,

24  however, conclusively a reasonable fee and other factors may necessitate an adjustment," such as

"the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." Id. And "[t]he reasonable hourly rate should be computed for each attorney, and each attorney's hourly rate may well vary with each type of work involved in the litigation." Id.

In deciding the number of hours "reasonably expended," the Court considers whether the time on matter that was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The requesting attorney "must provide reasonable documentation of the work performed" to enable this determination. Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983); Hensley, 461 U.S. at 433 (accord). "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e., senior partner, associate, etc.)." Bowers, 100 Wn.2d at 597. "Illegible, abbreviated time records, submitted in a form not reasonably capable of evaluation, do not satisfy the burden of submitting detailed time records justifying the hours claimed." Stewart v. Gates, 987 F.2d 1450, 1453 (9th Cir. 1993) (citation and quotation omitted).

### 1.    Hourly Rates

The Court here reviews the evidence supporting the rates requested for each attorney and paralegal and determines each person's reasonable rate for their work in this case.

Goldstine asks for approval of an hourly rate of $525 for Beth Bloom, which the Court finds appropriate. Bloom has been in practice for nearly 22 years with a focus on employment law since 2001. (See Bloom Decl. ¶¶ 6, 8 (Dkt. No. 338).) Bloom charges her hourly clients $525/hour and that Chief Judge Martinez approved her rate of $495/hour in 2019. (Id. at 15.) This is strong evidence of the reasonableness of her requested rate. See Bowers, 100 Wn.2d at 597. Bloom also cites to three declarations from local practitioners who are familiar with her

reputation, skill, and conduct during this trial and who aver that her hourly rate is reasonable: (1) Elizabeth Hanley of Schroeter, Goldmark, & Bender; (2) Hardeep Rekhi of Rekhi & Wolk, P.S.; and (3) Katherine Chamberlain of MacDonald Hoague & Bayless. Having reviewed the materials presented and observed Bloom's abilities and skill throughout this case and in her role as lead trial counsel, the Court finds her requested rate reasonable. The Court also notes that FedEx has not challenged Bloom's rate.

Goldstine asks for approval of an hourly rate of $425 for Ada Wong. The Court does not find this reasonable in light of her reputation, experience, and skill, the evidence presented as to market rates, and the relative lack of complexity in this case. Wong has been in practice for just over eight years. (See Wong Decl. ¶¶ 6, 10-11, 20.) Wong has raised her rates over the course of this case from $350/hour in 2018 to $375/hour in 2019 and then to $425/hour in 2020. (Id. ¶ 20.) But unlike Bloom, Wong provides no evidence that hourly clients pay any of these rates. And though Wong states she conducted two other jury trials in this District, both resulted in losses at trial and provided no confirmation of an hourly rate. (Wong Decl. ¶ 11); see Watson, et al. v. City of Vancouver, et al., C13-5963 RBL; Medvedeva v. City of Kirkland, et al., C14-07 RSL. Wong largely relies on the declarations from Hanley, Rekhi and Chamberlain. But none of the declarations serves as support for an hourly rate of $425. Each declarant has practiced twice as long as Wong (15-18 years) and yet bills at rates only marginally higher ($450 to $500/hour) than Wong's requested rate. Given Wong's far more limited experience, the comparison to these three other attorneys casts doubt as to Wong's requested rate. The same is true when comparing Wong's experience and skill to that of Bloom, with whom Wong associated to capitalize on Bloom's trial experience. (See Wong Decl. ¶¶ 21, 27.) The Court has also observed Wong's skill and ability through the life of this relatively non-complex matter, which the Court believes does not justify the requested rate. And while contentious, this case did not present particularly novel or complex issues of fact or law. Based on its review of the factors

above, the Court finds that an hourly rate of $375/hour is reasonable. In addition, the Court finds it appropriate to apply Wong's historical rate of $350/hour for time spent before 2019, which properly reflects Wong's relative skill and experience.

Goldstine asks for approval of an hourly rate of $300 for Jordan Wada. The Court does not find this reasonable in light of his experience and skill, the evidence presented as to market rates, and the relatively lack of complexity in this case. Wada graduated from law school in 2017 and has been practicing civil rights and employment law since 2018. (Wada Decl. ¶¶ 9-10.) Wada's requested rate represents a substantial increase from the hourly rate he billed from 2018 to 2020: $225/hour. Wada does not identify that any hourly clients pay his requested rates and he does he cite to any court approval of his hourly rates. While the Court notes that Wong, Bloom, Hanley, Rekhi, and Chamberlain suggest his requested rate is within market rates, no declarant explains why his proposed increase to $300/hour is justified or why that rate should apply to all of the work he has performed in this case. Wada has likely gained useful and practical experience through his participation in this case, but the Court is not convinced that the requested rate or applying it retrospectively would properly reflect Wada's actual experience and skill level. Having reviewed the evidence presented, considered the Court's own observations, and noting the lack of complexity of this matter, the Court finds that Wada's reasonable rate is $225/hour.

Goldstine also asks the Court to set hourly rates for several associates: (1) Kaytlin Carlson; (2) Michael Charbonneau; (3) Darrious Baker; (3) Rory O'Sullivan; and (5) Winthrop Hubbard. As to Carlson and Charbonneau, Goldstine seeks $300/hour and $250/hour, respectively. (Wong Decl. ¶ 25.) Hanley claims to have become familiar with the C.V.s for both and believes their rates "were reasonable and aligned with the customary rates in this community for professionals and paraprofessionals with similar experience." (Hanley Decl. ¶ 13.) But the Court has not been provided any supporting materials or evidence of their experience and has no means of testing

1   the accuracy of this statement. The Court therefore adopts Wada's $225/hour rate for these two

2   associates who hail from the same firm. As to Baker and O'Sullivan, Bloom avers that each has

3   8 years of experience and bills at $350/hour. (Bloom Decl. ¶ 19.) Hanley states that these rates

4   are "reasonable and aligned with the customary rates in this community for professionals and

5   paraprofessionals with similar experience." (Hanley Decl. ¶ 13.) The Court finds that this

6   information supports the requested rates. And as to Hubbard, Goldstine seeks an hourly rate of

7   $250/hour. Goldstine fails to provide a C.V. for Hubbard and Bloom only states that he has

8   "several years of experience." (Bloom ¶ 19.) The Court finds that given the limited evidence

9   presented, an hourly rate of $225 is appropriate given what appears to be a similar level of

10  experience as between Wada and Hubbard.

11          Goldstine also asks the Court to approve hourly paralegal rates of $200/hour for all

12  paralegal billers and time spent by counsel billed at a paralegal rate. Wong explains that her

13  paralegal, Kaila Eckert, has eight years of experience and now bills out at $200/hour, a marked

14  increase from her pre-2020 rate of $125/hour. (Wong Decl. ¶ 28.) Bloom explains that her

15  paralegals, Laura Bammer and Parlee Waters, now bill hourly and contingent matters at a rate of

16  $200/hour, which is an increase from their pre-2020 rates of $150/hour. (Bloom ¶ 22.) Bloom

17  provides no evidence of their relative experience. Of the declarants, only Hanley speaks to the

18  issue of paralegal rates, and she claims the requested rates are within market. (See Hanley Decl.

19  ¶ 13.) The Court notes that it recently found a rate of $175/hour reasonable for a paralegal with

20  40 years of experience in the local Seattle market. See Deane v. Pacific Financial Group Inc., et

21  al., C19-722 MJP, Dkt. No. 185 at 7 (W.D. Wash. Feb. 10, 2021). Here, the evidence provided

22  shows that Eckert has one-fifth of the experience of the paralegal in Deane and yet requests

23  $25/hour more than was awarded. Considering the award in Deane, the evidence provided, the

24

Court finds a rate of $150/hour reasonable for all paralegal work performed in this case, including when billed by attorneys. The Court also determines that Eckert's pre-2020 time shall be billed at her historical rate of $125/hour, which reflects prior statements from counsel that this rate was reasonable, as well as Eckert's relative experience and the market rates. (See, e.g., Dkt. No. 140 at 6.)

### 2.   Hours Expended

The Court next assesses the reasonable number of hours spent litigating this matter, particularly in light of the arguments FedEx advances in its opposition. The Court is aware that Goldstine's counsel has written off some roughly 7% of the billed time, but the Court finds further reductions are reasonable and necessary.

### a.   Clerical Time

Although Goldstine agrees to and has reduced time spent on "clerical" tasks, FedEx asks the Court to further pare down time entries for "clerical" work. FedEx identifies 549 hours of what it claims is non-billable clerical work. (See Marisseau Decl. ¶ 9 (Dkt. No. 344).) In his reply, Goldstine agrees to a reduction of 38.1 hours of Eckert's time. (See Pl. Reply at 1 (Dkt. No. 353) (citing 45C Am. Jur. 2d Job Discrimination § 2701).) The Court has reviewed the billing records and has not determined that there are any further reductions merited. Thus, the Court will only reduce the additional 38.1 hours Goldstine proposes.

### b.   Failure to Accommodate Claim

Goldstine has agreed to reduce the time his counsel spent on his failure to accommodate claim. (Wong Decl. ¶ 59(f) (Dkt. No. 333 at 15).) FedEx asks for a reduction of the time spent on Goldstine's unsuccessful reasonable accommodation/interactive process claims. (Opp. at 3 (Dkt. No. 342 at 4).) Specifically, FedEx specifically asks for the removal/reduction of the time spent on two depositions. One deposition focused entirely on the claim while FedEx estimates the

1   other witness spent roughly 20% the time testifying about this claim. The Court agrees that this

2   time should be deducted as FedEx proposes and which is consistent with Goldstine's own

3   position. The Court reduces $6,089.25 in fees and $858.00 in costs for the one transcript.

4           FedEx asks the Court to reduce one-third of the time Goldstine's counsel spent drafting

5   his second motion for summary judgment to reflect the amount of time devoted to the failure to

6   accommodate claim. FedEx also argues that counsel spent excessive time, duplicated efforts, and

7   engaged in unnecessary internal meetings. Goldstine's counsel spent 262.5 hours on the motion,

8   112.1 of which were billed by Wong and Bloom to drafting, reviewing, and revising. The Court

9   agrees that time spent drafting the motion which can be allocated to the failure to accommodate

10  claim should not be counted. And the Court agrees that there is evidence of a good deal of

11  duplication in work and excessive time spent including on internal meetings. The Court finds

12  that a reduction of 30% of the hours billed properly reflects a reduction for time spent pursuing

13  the abandoned claim and for excessive and duplicative work. This leads to a deduction of 78.1

14  hours, which yields a $26,991.00 reduction by applying the adjusted hourly rates.

15                  **c.      Motion to Quash Subpoenas to Medical Providers**

16          FedEx seeks the exclusion of 55.3 hours Goldstine's counsel billed to filing a motion to

17  quash medical subpoenas. The Court denied the motion and finds that the time spent on this

18  motion was both unsuccessful and unnecessary. The Court deducts all of the hours spent, which

19  were no reasonably necessary to this litigation.

20                  **d.      Motion for Sanctions for Mistrial**

21          FedEx asks the Court to exclude all of the time Goldstine claims his counsel incurred due

22  to the mistrial which equates to approximately $100,000. Goldstine earlier sought sanctions for

23  35% of the time spent by counsel preparing for the trial during the four weeks before trial. In

24

1    denying the request, the Court explained that "both sides bear responsibility for the unreadiness

2    of this matter for trial on the previously-set trial date and the consequent <u>sua</u> <u>sponte</u> declaration

3    of a mistrial." Order Denying Motion for Sanctions, Dkt. No. 185 at 2. The Court explained that:

4           Both sides have financial losses from their original preparation which cannot be recouped;
            both sides will have to incur additional expense to prepare for the next trial. Both sides will
5           bear their own costs.

6    (<u>Id.</u> at 3.) Consistent with this prior Order, the Court will not award Goldstine for the time spent

7    preparing for the earlier trial that he has identified as necessarily duplicated in the second trial.

8    The Court will also deduct the hours and costs associated with the unsuccessful motion for

9    sanctions. That results in a reduction of $73,763.38 in mistrial-related billings and $8,452.49 in

10   costs. The Court also applies a reduction of $13,530 for the time billed to the motion for

11   sanctions and the requested costs of $3,500. (Dkt. No. 144; Dkt. No. 164.) In total, the Court will

12   reduce the award by $87,293.38 in fees and $11,952.49 in costs.

13                  **e.      Motion for Relief from Settlement Conference**

14          FedEx asks the Court to exclude 13.6 hours Goldstine's counsel billed in an effort to

15   avoid the settlement conference. The Court agrees that this motion was both unnecessary and

16   unsuccessful, and that the time was not well spent. The Court will exclude these 13.6 hours.

17                  **f.      Previously Paid Fees for Motion to Compel and for Sanctions**

18          The Parties agree that the Court should reduce the award by $4,254 to account for a

19   payment FedEx already made as ordered by the Court. The Court will so reduce the award.

20                  **g.      Unnecessary, Duplicative and Excessive Time**

21          FedEx seeks a reduction of several time entries which it claims includes unnecessary,

22   duplicative, or excessive time. The Court agrees in part.

23          First, FedEx takes issue with 5 hours Wong billed for what was a 20-minute hearing with

24   the Court in November 2019. The Court cannot conclude that the time billed was excessive or

1   unnecessary given counsel's assertion that she needed to prepare for the hearing. While defense

2   counsel may have billed less, the Court does not find the time was excessive or unnecessary.

3        Second, FedEx takes issue with 10.5 hours ($4,012) spent by Goldstine in drafting a

4   motion to preadmit documents under Rule 902. As FedEx points out, as soon as FedEx objected

5   to the request, Goldstine withdrew the motion. Had Goldstine simply attempted to meet and

6   confer on this issue, the time could have been avoided or substantially reduced. The Court finds

7   that the time spent on this motion was unnecessary or excessive and awards no fees for this time.

8        Third, FedEx asks the Court to deduct the time spent by counsel for the second and third

9   jury focus group sessions that Goldstine conducted. The Court agrees that the time spent with

10   jury focus groups and the jury consultant was not necessary or reasonable. The attorneys in this

11   case combined to have substantial trial experience, as reflected in the hourly rates. The Court

12   does not believe that such an experienced team needed the assistance of a consultant or that the

13   time spent was reasonable or necessary. The Court deducts all time billed related to the jury

14   consultant and jury focus groups. Based on the Court's review, that results in a reduction of

15   $37,957.50 (65.5 hours billed by Wong, 23.6 hours billed by Bloom, and 6.7 hours billed by

16   Eckert).

17        Fourth, FedEx challenges all 50.5 hours that Wada billed for attending trial without

18   having any role in examining or cross-examining witnesses. As Bloom states, Wada helped with

19   voir dire, prepared witnesses, and used his trial observations to draft mid-trial motions and

20   oppositions to FedEx's mid-trial motions. And the Court observed that FedEx itself had three

21   attorneys present during trial. The Court finds that the hours billed by Wada during trial were

22   reasonable and necessary and will not reduce them from the award.

23

24

1

### h.   Block Billing

2    FedEx takes issue with 459.2 hours Wong billed that it claims are block billed and should

3 be reduced by 30%.

4    Block billing generally deprives the Court of the ability to determine whether time spent

5 on more than one divergent task is reasonably spent. Inadequate segregation of time falls below

6 the standards required of counsel to support a request for fees under federal or Washington law.

7 See Stewart, 987 F.2d at 1453; Bowers, 100 Wn.2d at 597.

8    The Court agrees in part with some of FedEx's criticism of Wong's billings. First, Wong

9 includes twenty-four entries in which she block-billed her time and included time spent traveling

10 to and from her office to hearings, depositions, and trial in the greater Seattle area. The Court

11 will not award fees for time spent traveling within the greater Seattle area for attorneys with

12 offices in the area. And the Court does not find it proper for travel time to be billed at an

13 attorney's full hourly rate. Wong's failure to segregate this time from her entries also makes it

14 unclear how much time she spent traveling. The Court therefore deducts 1.5 hours for travel

15 from each entry, for a total of 36 hours.

16    Second, the Court's review of Wong's billing records shows that she frequently block-

17 bills for time spent on unrelated, discrete tasks. This impedes the Court's ability to ensure the

18 time was not excessive. And while this does not affect each entry, the Court finds this habit

19 applies to 143.1 hours billed. The Court finds that a reduction of 20% to these hours is the fairest

20 way to account for time that may have been excessively incurred but which cannot be fully

21 assessed due to the block billing. The Court will thus reduce Wong's hours by 28.6.

22

23

24

### i.      0.1 Billing Entries

FedEx takes issue with 32 hours Bloom billed in .1 time increments. It argues that the Court should reduce this by half because billing like this for small tasks can artificially inflate the time. The Court has reviewed the entries and does not agree. From the billing entries it appears that the time was reasonably spent on legitimate tasks.

### j.      Total Lodestar

Based on the records provided by counsel and the reductions noted above, the Court makes the following lodestar calculation:

| Biller | Hours | Rate | Total |
|---|---|---|---|
| Wong | 1026.56 | $375/hour | $384,960.00 |
| Wong | 25.4 | $350/hour (historic) | $8,890 |
| Wong | 2.8 | $150/hour (paralegal) | $420 |
| Wada | 853.44 | $225/hour | $192,024.00 |
| Wada | 8.3 | $150/hour (paralegal) | $1,245.00 |
| Wada | 18.9 | $112.50/hour (half) | $2,126.25 |
| Carlson | 12.3 | $225/hour | $2,767.50 |
| Carlson | .5 | $150/hour (paralegal) | $75.00 |
| Charbonneau | 7.8 | $225/hour | $1,755.00 |
| Eckert | 91.25 | $150/hour | $13,687.50 |
| Eckert | 134.6 | $125/hour (historic) | $16,825.00 |
| Bloom | 767.2 | $525/hour | $402,780.00 |
| Bloom | 6.6 | $262.50/hour (half) | $1,732.50 |
| Bloom | 4.1 | $150/hour | $615.00 |

| Hubbard | 58.1 | $225/hour | $13,072.50 |
|---|---|---|---|
| Hubbard | 144.6 | $150/hour (paralegal) | $21,690.00 |
| Baker | 10.5 | $350/hour | $3,675.00 |
| O'Sullivan | 2.7 | $350/hour | $945.00 |
| Bammer | 161.8 | $150/hour | $24,270.00 |
| Waters | 14.9 | $150/hour | $2,235.00 |
| | | Subtotal | $1,095,790.25 |
| Failure to Accommodate Deposition Fees | | | ($6,089.25) |
| Mistrial Related Fees | | | ($87,293.38) |
| Previously Paid Fees | | | ($4,254) |
| **Grand Total** | | | **$998,153.62** |

**C.    Multiplier**

Goldstine asks the Court to apply a 1.25 multiplier to the lodestar. The Court disagrees.

Under federal law, the lodestar calculation leaves "very little room" for an enhancement. See Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 566 (1986). "Foremost, the applicant must show the requested enhancement is "necessary to the determination of a reasonable fee." Stewart, 987 F.2d at 1453. Goldstine bears a "heavy burden" and "may not rely on . . . contingent risk of nonpayment of fees." Id. Under Washington law, "[t]he lodestar amount may be adjusted to account for subjective factors such as the level of skill required by the litigation, the amount of potential recovery, time limitations imposed by the litigation, the attorney's reputation, and the undesirability of the case." Brand v. Dep't of Labor & Indus. of State of Wash., 139 Wn.2d 659, 666 (1999), as amended on denial of reconsideration (Apr. 10,

1    2000), as amended (Apr. 17, 2000) (citing Bowers v. Transamerica Title Ins. Co., 100 Wn.2d

2    581, 597 (1983); Rules of Professional Conduct (RPC) 1.5(a)).

3           The Court does not find that this case warrants application of a multiplier. It presented a

4    straightforward factual pattern and legal issues typically found in disability discrimination cases.

5    And while the claims required skilled lawyers to achieve a successful result, the Court has

6    already factored counsel's skill and reputation in determining their reasonable hourly rates. Nor

7    is the Court convinced that the degree of risk or public policy considerations warrant a

8    multiplier. The Court therefore finds Goldstine fails to provide any basis on which to

9    demonstrate the propriety of applying a multiplier to the lodestar. The request is DENIED.

10   **D.     Expenses**

11          Both the WLAD and ADA permit a prevailing party to recover the nontaxable costs of

12   litigation including "expenses, and costs." Lovell v. Chandler, 303 F.3d 1039, 1058 (9th Cir.

13   2002); Blair v. Wash. State. Univ., 108 Wn.2d 558, 573 (1987); 42 U.S.C. § 12205; RCW

14   49.60.030(2).

15          FedEx challenges the costs associated with rent, lodging and the jury consultant. The

16   Court agrees. First, given that counsel maintains offices in the greater Seattle area, it is not

17   entitled to recover the costs of rent or lodging. These costs are more accurately categorized as

18   overhead which the Court finds should not be recovered. The Court therefore deducts $4,189

19   requested for lodging and rent. Second, the Court bars recovery for the costs of the jury

20   consultant—$47,527.00—for the same reasons as stated above. Should counsel believe they need

21   the assistance of jury consultants, then they shall bear that cost. See U.S. ex rel. Marchese v. Cell

22   Therapeutics, Inc., No. C06-168 MJP, 2008 WL 4950938, at *2 (W.D. Wash. Nov. 18, 2008).

23

24

1   The Court also deducts the costs associated with the jury focus group, which are an additional

2   $4,769.17. (Dkt. No. 33-2 at 6-7.)

3         The Court has reviewed the other requested expenses and finds them to be reasonable. In

4   Applying the reductions for the deposition transcript and mistrial expenses, the Court finds it

5   reasonable to award expenses in the amount of $47,726.37 ($117,022.03 - $858 - $11,952.49 -

6   $4,189 – $47,527.00 - $4,769.17 = $47,726.37).

7   **E.    Fees for Motion for Fees and Costs**

8         Goldstine asks for the Court to award him fees for bringing the Motion for Attorneys'

9   Fees and Costs. Goldstine's counsel reports 226.1 hours drafting this Motion—181.3 hours for

10  the opening brief and 44.8 hours for the reply. FedEx asks for the Court to reduce the award by

11  100 hours, but provides no reasoning as to why this is the correct reduction.

12        The prevailing party may recover fees for "the time spent in establishing entitlement to an

13  amount of fees awardable under" federal law. See Clark v. City of Los Angeles, 803 F.2d 987,

14  992 (9th Cir. 1986) (considering § 1988 claims); See Lambert v. Ackerley, 180 F.3d 997, 1012

15  (9th Cir. 1999); see also Coachman v. Seattle Auto Mgmt., Inc., No. C17-187 RSM, 2019 WL

16  4695660, at *14 (W.D. Wash. Jan. 3, 2019), aff'd, 787 F. App'x 416 (9th Cir. 2019) (allowing

17  fees for post-trial motions). But "[a] fee request that is supported by simple affidavits and well-

18  kept records should not be a major piece of litigation as the law in this area is not new or

19  complex." Marchese, No. C06-168 MJP, 2008 WL 4950938, at *2 (finding a request for

20  $216,946 as "fees on fees" to "shock[] the Court" and trimming the award to the time spent by

21  one partner and one associate).

22        The Court finds that the time spent on the Motion for Fees and Costs to have been

23  excessive. While the motion contained many moving parts, they primarily consisted of billing

records that should be readily obtainable from the billing records maintained by counsel in the ordinary course of business. The legal issues are straightforward and hardly novel. Yet in the Court's review of the hours it finds excessive time spent on the fee request, including excessive time that both Bloom and Wong drafting their declarations. The billing records also reveal duplicative and excessive work. Based on this review, the Court finds a reduction of 30% is appropriate to account for the excessive and duplicative time. Applying the reasonable hourly rate set by the Court and the 30% reduction, the Court awards $49,733.25 for the Motion.

**F.      Fees for Other Post-Trial Opposition Work**

As indicated in the Order on FedEx's Motion for Judgment as a Matter of Law and Motion to Amend the Judgment, the Court finds it appropriate to award fees to Goldstine for the time spent opposing both motions.

As to Opposition to FedEx's Motion for Judgment as a Matter of Law, the Court finds that the time entries show some lack of coordination that led to excessive and duplicative time. The Court reduces the fees requested by 5% to account for entries that it believes were redundant and thus excessive. But the Court otherwise found the time spent reasonable and necessary to oppose FedEx's attack to the outcome at trial on many legal and factual fronts. Applying the reasonable hourly rate set by the Court and a 5% reduction, the Court awards $37,038.13.

As to the Opposition to FedEx's Motion to Amend the Judgment, the Court found the briefing helpful and that the amount requested—$1,150—to be reasonable.

## CONCLUSION

The Court GRANTS in part and DENIES in part Goldstine's Motion. The Court has determined that the lodestar of $998,153.62 yields an appropriate and reasonable award of fees to counsel for their successful efforts in litigating this case. And the Court also awards an additional

$87,921.38 in fees for the post-trial motions and oppositions for a grand total of $1,086,075.00 in fees. The Court also finds an award of $47,726.37 for litigation expenses justified and reasonable. The amended judgment shall reflect these amounts.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 12, 2021.

Marsha J. Pechman
United States District Judge